South Parkway Building Corporation, Appellant, v. Theatre Amusement Company and Balaban and Katz Corporation, Appellees.

Gen. No. 43,217.

Opinion filed April 11, 1946. Rehearing denied May 15, 1946. Released for publication May 16, 1946.

ROSENTHAL, ELDRIDGE, KING & ROBIN, of Chicago, for appellant; WILLARD L. KING, SIDNEY L. ROBIN and DOUGLASS PILLINGER, all of Chicago, of counsel.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellees; ISSAAC E. FERGUSON and MORTON LANE, both of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This action was brought by plaintiff, South Parkway Building Corporation as lessor, to recover from the defendant, Theatre Amusement Company as lessee, an alleged balance of rent amounting to $19,097.29 claimed to be due under a written lease. The defendant, Balaban & Katz Corporation, was sued as the guarantor of the payment of said rent to the extent of $10,000. The case was tried without a jury. The trial

court found the issues against plaintiff and entered judgment in favor of defendants. Plaintiff appeals. The principal defendant, Theatre Amusement Company, will sometimes hereinafter for convenience be referred to as the defendant.

The lease in question was made on March 1, 1933. It covered a motion picture and vaudeville theatre at 4719 South Parkway, Chicago, Illinois. The lease was for a five year term, from March 1, 1933 to and including February 28, 1938, with the right in the lessee on notice (which was later given) to extend the term for an additional five years or to February 28, 1943. The lease provided that the minimum rental for the original term was $20,000 a year and for the extended term $22,500 a year and in addition the lessee agreed to pay during the original and extended term a percentage rental of 20 per cent of the box office receipts in excess of $3,000 per week and 25 per cent of the box office receipts in excess of $4,000 per week.

For reasons which were deemed mutually advantageous at the time to the lessor and the lessee they modified the lease on September 1, 1934 by a supplemental indenture, which by its terms became section 6 of article II of said lease. This indenture provided inter alia that in computing the percentage or extra rental at the end of each lease year the lessee would be entitled to deduct ''for the period from March 1, 1934 to and including February 28, 1938'' *one half* of its ''cost of talent'' for stage productions from the amount of its gross box office receipts; that the lessee would not be entitled to this deduction for the lease year from March 1, 1934 to February 28, 1935 unless the cost of talent exceeded $15,000 for the period from September 1, 1934 to February 28, 1935; that ''such deduction shall not be made from gross box office receipts for any lease year during the period from March 1, 1935, to and including February 28, 1938, unless during such lease year the lessee shall expend

for such cost of talent an aggregate amount in excess of Thirty thousand dollars''; that ''either of the parties hereto may at any time after June 1, 1935, upon giving the other party ninety (90) days notice of his or its (as the case may be) intention so to do, terminate the period within which the provisions of said section 6 of article II shall be in force and effect, and thereafter the lease and all of the terms, conditions, provisions, stipulations, agreements, requirements, covenants and obligations thereof shall continue in full force and effect as though the lease had not by this supplemental indenture been amended and modified and as though said section 6 of article II had never been added to and incorporated in said lease''; and that ''this supplemental indenture shall in all respects be treated as part of the said lease as though the provisions hereof were fully incorporated therein and, excepting only as hereby, and to the extent only hereby, expressly modified, all the terms, conditions, provisions, stipulations, agreements, requirements, covenants and obligations of the said lease shall continue in full force and effect.''

As already stated, the lease gave the lessee the option of extending the term thereof and by notice in writing, dated July 29, 1937, said lessee elected to exercise its option to extend the lease for an additional five years. The extension notice is a lengthy document but the portions thereof pertinent to this controversy set forth the rental provisions of the lease applicable to the extended term (*i.e.,* minimum annual rental of $22,500, plus 20 per cent of gross box office receipts in excess of $3,000 per week [up to $4,000] and 25 per cent of receipts in excess of $4,000 per week) and stated that ''said indenture was amended by supplemental indenture entered into as of the first day of September, 1934, by and between lessor and lessee''; and that ''the undersigned [lessee] hereby elects to exercise the said option to

extend said lease for the period commencing the first day of March, 1938, at 12:01 A. M., and ending February 28, 1943, at midnight, *upon the terms and conditions in said lease and supplemental indenture set forth.*" (Italics ours.)

The lessor made no contemporaneous response to the lessee's notice of extension of the term of the lease. The lessee was permitted to remain in possession from and after March 1, 1938 and continued to pay rent in compliance with the terms of the lease as modified by the supplemental indenture, in accordance with its understanding of such terms.

The following tabulation shows the fixed rent, the gross receipts, the cost of talent and the percentage or extra rent paid by defendant for each year of the original and extended terms of the lease:

| "Lease year. | Receipts. | Cost of Talent. | Fixed rent. | Extra rent. |
|---|---|---|---|---|
| 3/1/33–2/28/34 | $154,082.00 | $31,955.00 | $20,000.00 | None |
| 3/1/34–2/28/35 | 190,569.50 | 51,668.02 | 20,000.00 | $ 4,774.04 |
| 3/1/35–2/28/36 | 164,195.20 | 33,994.34 | 20,000.00 | 1,345.40 |
| 3/1/36–2/28/37 | 188,768.80 | 12,005.60 | 20,000.00 | 6,468.03 |
| 3/1/37–2/28/38 | 165,329.22 | 11,005.12 | 20,000.00 | 1,780.14 |
| 3/1/38–2/28/39 | 138,608.10 | 11,726.70 | 22,500.00 | None |
| 3/1/39–2/28/40 | 140,986.25 | 17,761.98 | 22,500.00 | None |
| 3/1/40–2/28/41 | 156,717.91 | 29,183.02 | 22,500.00 | 57.87 |
| 3/1/41–2/28/42 | 227,228.71 | 57,803.00 | 22,500.00 | 8,371.16 |
| 3/1/42–2/28/43 | 353,747.04 | 99,073.84 | 22,500.00 | 34,338.24 " |

After September 1, 1934, when the supplemental indenture was executed, and during the balance of the original term of the lease, the lessee made detailed monthly reports to the lessor as to its stage shows, including the cost thereof. Subsequent to March 1, 1938, the first day of the extended term of the lease, the lessee continued to make similar monthly reports.

In the first three years of the extended term the cost of talent to the lessee was respectively: $11,726.70, $17,761.98 and $29,183.02. Since the cost of talent in each of these years did not exceed $30,000, the lessee would not in any event be entitled, in computing his

percentage or extra rent, to deduct any amount for the cost of its stage shows from its gross receipts from admission fees.

In the fourth year of the extended term, commencing March 1, 1941, there was an increase in the expenditures by the lessee for stage show talent. By October 1, 1941 these expenditures, as reported by the lessee to the lessor, amounted to $24,688.99. If the lessee's expenditures for talent continued at the same rate for the rest of that lease year, the lessor realized that they would aggregate more than $30,000. In October 1941 the lessor notified the lessee by letter that in the opinion of lessor's attorney the supplemental indenture had expired by its express terms on February 28, 1938, the last day of the original term of the lease. The lessee disregarded this notice and deducted one half of $57,803, the amount it paid for stage talent during the year in question, from its gross receipts in computing its percentage or extra rental for said year. The lessee's check for extra rent in the amount as thus computed was returned by the lessor on the ground that the supplemental indenture had expired on February 28, 1938 and that it was not required after said date to share the cost of stage talent.

The lessee expended $99,073.84 for stage talent for the fifth or last year of the extended term of the lease and since this amount exceeded $30,000, the lessee computed its extra rental for that year in the same manner as it did for the previous year. Lessee's check for extra rent for the year commencing March 1, 1942 was also returned by the lessor. Thereafter under a stipulation both checks so returned by the lessor were later accepted by it without prejudice to the rights of the parties to this litigation.

Plaintiff contends that "the supplemental indenture terminated on February 28, 1938" and that "the supplemental indenture was not extended." In other

words plaintiff claims that, notwithstanding the fact that defendant's expenditures for talent for stage shows exceeded $30,000 for each of the last two years of the extended term of the lease, the lessee wrongfully deducted one half of its cost of talent from its gross receipts in computing its percentage or extra rent for said last two years, because the supplemental indenture expired by its express terms on February 28, 1938; and that the defendant is therefore indebted to plaintiff in the additional amount of $19,097.29 as percentage or extra rent for those two years.

Defendant's answer to plaintiff's contentions is that the supplemental indenture was intended by the lessor and the lessee to constitute a permanent change in the method of computing the extra rent, subject only to the right given to either party by said supplemental indenture to terminate the new arrangement by 90 days notice. It is conceded that, if the supplemental indenture was carried over into the extended term of the lease by defendant's notice of extension, the lessee's computation of extra rent for the two years in question was correct and that it owes nothing to the lessor.

In our opinion plaintiff's position is untenable and purely an afterthought. In support of its contention that the supplemental indenture expired by its express terms on February 28, 1938, plaintiff relies solely on the italicized portion of the following provisions of said indenture:

"In computing the additional rental, *for the period from March 1, 1934, to and including February 28, 1938,* to be paid by the lessee to the lessor . . . there shall be deducted from the amount of gross box office receipts . . . an amount equal to one-half of the aggregate sums expended by the Lessee for the cost . . . of obtaining the services of stage performers personally employed in stage productions ex-

hibited by the lessee in the leased premises during any lease year, between March 1, 1934 and February 28, 1938 . . . such deduction shall not be made from gross box office receipts for any lease year during the period from March 1, 1935, to and including February 28, 1938, unless during such lease year the lessee shall expend for such cost of talent an aggregate amount in excess of Thirty Thousand Dollars. . . . '' (Italics ours.)

Plaintiff insists that the italicized portion of the foregoing provisions is so clear, explicit and unambiguous that the parties could only have intended that the supplemental indenture would expire on February 28, 1938, even though the lessee exercised its option to extend the term of the lease, of which the supplemental indenture was an integral part. Of course, the dates themselves are definite but it seems clear that the parties did not intend them to have the significance plaintiff attributes to them. When it is considered that the real purpose of the supplemental indenture was to afford a new method of computing the extra rent by permitting the lessee to deduct one half of the cost of stage talent, when such cost exceeded $30,000 for any lease year, from its gross box office receipts before calculating the percentage rent specified in the lease, we are convinced that the parties clearly intended to effect a permanent change in such computation, subject only to the termination of the supplemental indenture by either party upon 90 days notice and that the use of the aforementioned dates was merely incidental. While the supplemental indenture was executed September 1, 1934 and plaintiff was not to commence to share the cost of talent until that date, said indenture was made retroactive to March 1, 1934. It does not appear why it was made retroactive but it will be noted that *the period from September 1, 1934 to and including February 28, 1938* was coextensive with the then remainder of the origi-

nal term of the lease and we think that the only purpose of the parties in using said dates was to indicate that fact. It is difficult to perceive how it makes a particle of difference whether the time during which plaintiff was to share the cost of talent was described in the supplemental indenture as the "remainder of the original term of the lease" or the period from September 1, 1934 to and including February 28, 1938. The duration of time under either description would have been identical. The supplemental indenture itself provided that it "shall in all respects be treated as part of the said lease as though the provisions hereof were fully incorporated therein." We think that the requirement in the supplemental indenture that the lessor share the cost of stage shows in accordance with the provisions thereof is susceptible of no other or different construction than if it had been incorporated as a provision of the original lease when it was executed.

We are impelled to conclude from the terms of the supplemental indenture itself that the parties thereto intended thereby to effect a permanent change in the method of computing the extra rent, subject only to the right of either of them to terminate said indenture upon 90 days notice, which right was not exercised by plaintiff, and that the provision of the supplemental indenture that plaintiff share in the cost of talent for stage shows was carried over into the extended term by defendant's notice of extension with the same force and effect as were all the other provisions of the lease.

If it be assumed that the provisions of the supplemental indenture are in any wise ambiguous, it is proper to consider the circumstances under which it was executed and it is conceded that if there is any ambiguity in the lease as modified by said supplemental indenture it should be resolved in favor of the tenant.

The theatre in question had a seating capacity of approximately 2900. While it was equipped for the

production of stage shows, the lessee was not required either under the lease or the supplemental indenture to present stage shows in addition to moving pictures. As already shown, the original term of the lease commenced March 1, 1933. The defendant spent $29,355 for talent to present stage shows during nine months of 1933, suffering a loss in its operation of the theatre during that period of more than $1,000. For the first six months of 1934 defendant paid $18,553 for stage productions and during that period realized a profit of only $423. According to plaintiff, sometime prior to September 1, 1934 defendant threatened to discontinue the stage shows if the lessor did not agree to share the cost thereof. It should be noted that the purpose of the stage shows was to stimulate attendance and receipts. Higher admission prices were charged when stage shows were presented than when the shows consisted solely of moving pictures. The theatre occupied a portion of a rather extensive building. The building contained a large dance hall, a department store and numerous stores and offices which were rented for various uses. The lessor unquestionably recognized the value to it of attracting as large an attendance as possible to the theatre because of the favorable effect it would have on the business of the tenants in the building. The lessor also undoubtedly appreciated that a large attendance at the theatre would enhance the rental value of the building.

When the lessor agreed in the supplemental indenture to share the cost of the stage shows to the extent and under the conditions heretofore shown, it certainly was not actuated by any philanthropic motive. It is reasonable to conclude that plaintiff agreed to the terms of the supplemental indenture because it felt that it would be mutually advantageous to the parties to effect the change in the method of computing the extra rent. Exactly the same conditions that prompted the making of the supplemental indenture

prevailed when the lessee by timely notice exercised its option to extend the lease for five additional years. In its notice of extension the lessee expressly stated that it was exercising its option "upon the terms and conditions in said lease and supplemental indenture set forth." Plaintiff did not make the slightest objection to the notice of extension and permitted the defendant to remain in possession as its tenant for the extended term of the lease. All that plaintiff has to say in this connection is that defendant's notice of extension could not possibly have served to project or carry over into the extended term of the lease the supplemental indenture which had expired by its expressed terms on February 28, 1938. If plaintiff had taken that position when it received the notice of extension and had objected to said notice on that ground the defendant would have been afforded the opportunity of deciding whether or not it desired to avail itself of its option to extend the lease. Commencing September 1, 1934 defendant was required to and did make detailed monthly reports to plaintiff as to its cost of talent for stage shows. Subsequent to February 28, 1938 and during the entire additional term of the lease, with the exception of the months of March, April and May, 1938, when apparently no stage show talent was employed, defendant continued to make monthly reports of its cost of talent without any suggestion or intimation by plaintiff that such reports were no longer necessary or required.

The supplemental indenture viewed in the light of the foregoing facts and circumstances cannot be reasonably construed otherwise than that the requirement thereof that plaintiff share in the cost of stage show talent to the extent indicated therein was projected and carried over into the extended term of the lease.

Counsel state in plaintiff's brief that "we have found no case which is exactly in point on the con-

struction of this lease." They then go on to state: "We have found a number of cases on the question of whether an option to purchase given a lessee in a lease may be exercised after the term of the lease has been renewed or extended. These cases turn on a variety of factors, not all of which are present in the case at bar. However, even in such a case it is clear that if the option of purchase is expressly limited to a specific date, such option is not available to the tenant in the extended period. And this is true even though the specific date to which the option is limited is the last day of the first period of the lease."

We have carefully examined the cases cited and considered counsel's discussion concerning same. There is not the slightest analogy between any question determined in those cases and the question of construction presented in the case at bar.

We have considered the other points urged but in the view we take of this case we deem it unnecessary to discuss them.

For the reasons stated herein the judgment of the superior court of Cook county should be and it is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.