Bernard S. Meter, J.
This proceeding under section 179-b of the Village Law and article 78 of the Civil Practice Act seeks an order directing the Superintendent of Buildings of the Village of Lynbrook to issue a building permit without restriction. The permit as issued is indorsed to provide “ Counter top not permitted. No car hop service permitted. No over the counter window service permitted to outside patrons.” The property is in the Long Island Rail Road Lynbrook substation. The plans as filed cover a building equipped for the preparation of food, to accommodate 24 customers and 4 employees, with parking space for 4 cars and with a waist-high counter top running along part of the side of the building which faces Sunrise Highway. The property is zoned Commercial; in a Commercial District permitted uses include (Ordinance 55, art. VI, § I) “ (c) Amy retail or wholesale business or wholesale sample room, except which is expressly prohibited by this ordinance ” and “ (i) Restaurant, tea room or lunch counter.” Expressly prohibited uses include (art. VI, § II [y], art. VII, § II [13]) “ Lunch wagon, whether on wheels or foundation ”. The village contends that petitioner must exhaust his administrative remedies by appeal to the Board of Appeals, because under article XIV (§ III [b]) the board has authority “ where an appeal is taken for a variance to permit a use which is not expressly permitted nor expressly prohibited, * * * [to] grant a variance upon the standard and guide herein set forth.”
*470 Webster’s International Dictionary defines a restaurant as “An establishment where refreshments or meals may be procured by the public; a public eating house ” and a tearoom as “ Orig., a room, as in a public building, where tea is served; hence a small restaurant providing light meals, esp. tea.” A lunch counter has been described as a counter or table “ designed and used for furnishing lunches,” (Commonwealth v. Rogers, 135 Mass. 536, 539). A “ lunch wagon ” is apparently a roadside diner (101 C. J. S., Zoning, § 170, p. 926) but to the extent that it might be understood more broadly any conflict between the provision prohibiting a ‘ ‘ lunch wagon ’ ’ and the provision permitting a “ lunch counter ” must, under the rule that zoning ordinances are to be strictly construed, be resolved in favor of applicant. Clearly, therefore, petitioner’s proposed use is permitted, both as a retail business not expressly prohibited, and as a restaurant, tearoom or lunch counter.
The Building Inspector recognized this fact by issuing a permit, but sought to restrict the method of service by imposing the quoted conditions. He does not contend that any provision of the Building Code or the zoning ordinance prohibit outside counter service or carhop service, but takes the position that the method of service so changes the nature of the use as to take it out of the expressly permitted class. This argument is erroneous. While the above-quoted restaurant definition ‘ ‘ no doubt assumes that the refreshments are to be eaten on the premises, that qualification is here complied with since the food will be consumed there even though it be in automobiles stationed thereon.” (Food Corp. v. Zoning Bd. of Adjustment, 384 Pa. 288, 290-291; italics in original.) Fryer v. Board of Zoning Adjustment (359 Mo. 559), while apparently to the contrary, may be distinguished, in view of the fact that only root beer and ice cream were to be served. It appears from the plans that the customers served by carhops or by outside counter service will nonetheless be on the premises, not on the public thoroughfare, when the food is served and consumed. In the absence of specific language in the ordinance (e.g., Town of North Hempstead Building Zone Ordinance, §§ 101.2, 102.1), method of service has no bearing on whether the use is permitted. It follows that applicant is entitled to a permit without the above-quoted restrictions.
Had the defense of failure to exhaust administrative remedies been predicated upon section 179-b of the Village Law rather than article XIV of the ordinance, it would have required denial of the application as premature (Matter of Lindner v. Frisina, *471 194 N. Y. S. 2d 843). The defense as it relates to article XIV of the ordinance is insufficient, however, since the use is expressly permitted. A triable issue of fact exists with respect to petitioner’s status as lessee of the property in question, his allegation of that fact having been denied by the village and his name appearing nowhere on the building permit application or plans. If the parties can agree on that question, their stipulation may be presented together with an order granting the application; otherwise the matter is set down for Thursday, September 14, 1961 at 10:00 a.m. at Special Term, Part II, for proof on that question. Proceed accordingly.