American National Bank and Trust Company as Trustee Under Trust Number 16689, Plaintiff-Appellee, v. George Lembessis, Defendant-Appellant.

Gen. Nos. 53,385, 53,517. (Consolidated.)

First District, Third Division.

September 25, 1969.

Albert H. Beaver, Sodaro, Wisner & Beaver, of Chicago, for appellant.

Carl J. Greenberg, of Chicago, for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The American National Bank, as trustee, brought an action of forcible detainer against George Lembessis to recover possession of, and rent or damages for, the latter's alleged wrongful occupation of leased premises. After the defendant filed an appearance and jury demand but no responsive pleading to the complaint, the plaintiff filed a motion for summary judgment supported by an affidavit and exhibits. The defendant moved to strike the plaintiff's motion and filed counteraffidavits. The plaintiff answered the defendant's motion. The trial court denied the defendant's motion to strike and entered judgment in the plaintiff's favor. The defendant contends that his counteraffidavits raised genuine triable is-

sues of fact which precluded the entry of summary judgment.

The premises, located at 2423 West Lawrence Avenue in Chicago, were leased by the National Boulevard Bank, as trustee, to Peter Bleizeffer for a term beginning April 20, 1965, and ending April 30, 1968. The lease provided that the premises were to be operated as a "tavern and for no other purpose whatever." In December 1966, the defendant applied to the lessor's rental agent for approval of a contemplated assignment of the lease for the remainder of its term. He proposed to operate a tavern and restaurant business. The agent approved the assignment. Bleizeffer assigned his lease to the defendant with the consent of the National Boulevard Bank on December 16, 1966. On the same date, the bank and the defendant executed a written agreement for an extension of the assigned lease. The agreement provided as follows:

> ". . . if all terms, covenants, etc. are complied with as provided in [the] lease assigned to George P. Lembessis by Peter Bleizeffer covering the store located at 2423 W. Lawrence Ave. the Lessor agrees to give a lease with the same terms and conditions provided for in [the] assigned lease for a term of five years commencing from May 1st, 1968."

The defendant purchased the fixtures from Bleizeffer and at considerable expense remodeled and redecorated the premises. In March 1967, he opened his tavern and restaurant and operated the business in the name of the 2423 West Lawrence Corporation, an Illinois corporation, of which he was the sole shareholder. Licenses for the dispensation of food and alcoholic beverages and all insurance policies were issued in the corporation name, allegedly with the knowledge and consent of the lessor and its real estate agent.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

On February 16, 1968, eleven months after the defendant started in business, the American National Bank, as trustee, bought the building. On March 1, 1968, the plaintiff-bank wrote the defendant advising him that his operation of a restaurant and his failure to furnish a certificate of plate glass insurance violated the terms of the lease.

Around the first of April the defendant's attorney by letter requested the plaintiff's real estate agent (not the one who represented the National Boulevard Bank) to prepare a new lease for a term subsequent to April 30, 1968, with the 2423 West Lawrence Corp. as lessee. The plaintiff did not execute the new lease. It accepted the defendant's monthly rental payments of $175 each for March and April of 1968—the last months under the original lease—but refused to accept the ones tendered for May and June, the first months under the extended lease. The plaintiff informed the defendant that the extension agreement would not be honored unless the defendant increased the monthly payment from $175 to $350. The defendant rejected the demand for higher rent and continued in possession. The plaintiff's action for forcible detainer followed.

■■■■ The right to summary judgment is established by statute (Ill Rev Stats 1967, c 110, § 57) and the primary function of the procedure is to enable a court to determine whether there is any issue of fact to be tried by a jury. Craig v. Launer, 346 Ill App 234, 104 NE2d 830 (1952). If the pleadings, affidavits and exhibits show that there is a genuine issue as to any material fact, summary judgment must not be granted. Reed v. Albanese, 78 Ill App2d 53, 223 NE2d 419 (1966). Affidavits in support of a motion for summary judgment should be strictly construed and must leave no question as to the movant's right to judgment, whereas the opposing party's counteraffidavits should receive a liberal construction.

10

Des Plaines Motor Sales, Inc. v. Whetzal, 58 Ill App2d 143, 206 NE2d 806 (1965).

When the parties' affidavits are considered in this light it is apparent that they raised three issues: whether the defendant's operation of a tavern and restaurant violated the terms of the lease; whether he violated its terms in reference to plate glass insurance, and whether he forfeited his right to an extension of the lease by exercising the option in the name of a corporation rather than in his individual name.

■■■ The first issue involves an interpretation of that part of the lease which permitted the use of the premises "for a tavern and for no other purpose whatever." In construing a lease the primary objective is to ascertain the intent of the parties. O'Fallon Development Co. v. Reinbold, 69 Ill App2d 169, 216 NE2d 9 (1966). The intention of the parties must be ascertained if possible from the language in the lease, and the words used should be given their common and generally accepted meaning. Book Production Industries, Inc. v. Blue Star Auto Stores, Inc., 33 Ill App2d 22, 178 NE2d 881 (1961). Where the language of a lease is ambiguous, the court may consider the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease and the facts in connection with it. South Parkway Bldg. Corp. v. Theatre Amusement Co., 328 Ill App 447, 66 NE2d 437 (1946) ; Linn v. Clark, 295 Ill 22, 128 NE 824 (1920). Moreover, where there is any doubt or uncertainty as to the meaning of the language used in a lease it should be construed most strongly against the lessor and in favor of the lessee. Associated Cotton Shops v. Evergreen Park Shopping Plaza, 27 Ill App2d 467, 170 NE2d 35 (1960).

■■■ . The word "tavern" has different meanings. Samuel Johnson defined it as "a house where wine is sold, and drinkers entertained." Webster defines it as "a house

where liquors are sold to be drunk on the premises," as "a house where transient guests are accommodated with rooms and meals," and as a word often used synonymously with an inn or hotel. Webster, New International Dictionary (1927); Webster, Third New International Dictionary (1967). See also Babb v. Lewis, 244 Ore 537, 419 P2d 423 (1966); Hirn v. State, 1 Ohio St 15 (1852). American Jurisprudence 2d, Vol 40, § 12, Hotels, Motels, and Restaurants, states that the word "has been given various meanings by the courts as well as by custom and usage, and in itself is of little significance in determining the nature of an establishment. A tavern might lie within the definition of an inn or hotel, a restaurant, or a saloon." In Illinois the commonly accepted meaning of the word is a place where alcoholic beverages are sold for consumption on the premises. This meaning became prevalent after the repeal of the 18th Amendment—when "tavern" was one of the words that came into favor as substitutes for the "saloon" of the preprohibition era (bar, tap, pub, inn, lounge, club, tavern, etc.). Smith v. Ballas, 335 Ill App 418, 82 NE2d 181 (1948) and Szcyenpniak v. License Appeal Commission, 11 Ill App2d 193, 136 NE2d 562 (1956) were appeals from judgments denying and granting, respectively, applications for retail liquor licenses. In each case this court characterized the place of business contemplated by the licenses as a "tavern."

A "restaurant" is an establishment where meals may be procured by the public. Black, Law Dictionary (4th Ed 1951); Webster, Third New International Dictionary (1967); see Drucker v. Frisina, 31 Misc2d 469, 219 NYS2d 680 (1961); Food Corp. v. Zoning Board of Adjustment of City of Philadelphia, 384 Pa 288, 121 A2d 94 (1956). Section 95.23, chapter 43, Ill Rev Stats 1967, defines a restaurant as a place without sleeping accommodations where meals are regularly served to the public. However, many restaurants serve liquor and some establishments that are ostensibly restaurants have bars

where liquor is sold to be drunk on the spot. Just as there are restaurants which serve liquor, there are taverns which serve food. Generally, it can be stated that if the service of food is incidental to the business of serving liquor, the establishment is a tavern; but if the reverse is true the establishment is a restaurant. If neither is subordinate to the other the establishment may be both a tavern and a restaurant. Babb v. Lewis, supra; Stetzer v. Chippewa County, 225 Wis 125, 273 NW 525 (1937).

The lease here considered did not define the word "tavern" and did not have any descriptive terms to qualify and limit the word. Contrast Levy v. Johnstone & Hunt, 224 Ill App 300 (1922), where the lease provided that the premises were to be occupied "for a saloon and sale of wines and liquors and for no other purpose whatever." The court stressed the descriptive words "sale of wines and liquors" and stated the meaning of the word "saloon" in the lease was limited by the words associated with it.

The plaintiff's affidavit claimed that the defendant was operating a restaurant; the defendant's affidavit indicated that he was operating a tavern and a restaurant. In support of his contention that this was a permissible use the defendant presented an affidavit of the National Boulevard Bank's rental agent. The affidavit alleged that for six years prior to the assignment from Bleizeffer to Lembessis the premises had been operated as a tavern and restaurant, that the premises contained restaurant and tavern fixtures, that it was the agent's understanding that the term "tavern" included the sale of food, and that it was expressly understood between the agent and the defendant that a tavern and a restaurant were to be conducted on the premises.

To the rental agent and to his principal, the National Boulevard Bank, the word "tavern" in the lease meant a place where both food and liquor were sold. To the American National Bank's rental agent a tavern meant

a place where only liquid refreshments were to be sold. To the beneficiaries of the trust held by the American National Bank, a tavern could mean either one—depending upon whether the defendant was or was not willing to double his current rent.

The affidavits presented a genuine triable issue of fact as to whether the defendant was operating a restaurant in violation of the lease or a tavern that could also be called a restaurant but would not be a violation of the lease. Evidence of the surrounding circumstances and the meaning attributed to the word "tavern" at the time the lease was executed, and at the time the lease was assigned, are necessary to determine the understanding of the lessor and lessee. A contract is to be enforced according to the sense mutually understood by the parties at the time it was made. Greater deference should be given to their clear intent rather than to any particular word they may have used to express it. Knorr v. White Brothers Trucking Co., 79 Ill App2d 471, 224 NE2d 299 (1967). Where all the parties adopt and act on a certain construction of a contract, there is no better extrinsic evidence of their intention than the interpretation they themselves place on it. Keefer Coal Co. v. United Elec. Coal Companies, 291 Ill App 477, 10 NE2d 210 (1937).

The plaintiff by affidavit alleged that the defendant failed to furnish a certificate of plate glass insurance to the lessor as required by the lease. However, according to the exhibit filed with the affidavit (a portion of the lease between the National Boulevard Bank and Bleizeffer) it was the lessor's obligation to obtain the insurance:

"It is understood . . . that the Lessor, or assigns, is to place Plate Glass Insurance covering all exterior glass . . . during the entire term of the within lease and any renewal or extension thereof or any

14

holdover thereunder, and the premium therefor is to be paid by the Lessees. . . . Said policy shall remain in the possession of the Lessor, or the . . . Agent, during the entire term of the within lease."

In addition to this contradiction between the plaintiff's affidavit and the exhibit, the defendant's affidavit stated that "all necessary insurance requirements were complied with and is presently in full force and effect and always was, duly and timely in force." Construed liberally, this affidavit denied the allegation of the plaintiff and itself created a genuine triable issue of fact for a jury.

■ The plaintiff contends that even if the defendant did not violate the lease's limitation on the use of the premises or the lease's requirements with respect to insurance, he did not properly exercise the option to extend the lease and, therefore, it was under no duty to execute the extension. The defendant did not exercise the option in his individual name but requested that a new five-year lease be issued to his corporation. An option to extend a lease, in order to be effective, must be exercised in the mode specified by the agreement of the parties and in strict accordance with the scope of the privilege conferred; if the lessee requires the lessor to do something more than what is called for by the terms of the lease, the offer will be considered rejected. Bernier v. Benson, 21 Ill App2d 532, 159 NE2d 39 (1959) ; 51C CJS, Landlord and Tenant, § 57.

The plaintiff claims that the defendant's request materially changed the terms of the extension agreement. The defendant responds that his request was valid because he had assigned his lease to the corporation with the knowledge and consent of the then lessor. The assignment was not referred to in the defendant's motion or affidavits. However, he did contend that the tavern and restaurant business was conducted by and in the name of the corporation and that all licenses for dispensing of

food and alcoholic beverages and all necessary insurance policies were issued in the corporate name with the knowledge and consent of the National Boulevard Bank and its rental agent. The defendant's contentions, liberally construed, implied that there had been a waiver of the then lessor's right to object.

Earp v. Schmitz, 334 Ill App 382, 79 NE2d 637 (1948), was an action for forcible detainer. The premises were leased to Schmitz, d/b/a Central Architectural Iron Works, and it was charged that he allowed them to be occupied by the Central Steel Fabricating Company, a new corporation organized and controlled by him. The plaintiffs argued that the corporation was a distinct entity. The Appellate Court acknowledged this but stated that leases are to be construed most strongly against the lessor and that forfeitures are not favored in the law. It found that there was no hiding of the corporate existence from the lessors, that they were not misled, that they dealt with Schmitz individually, that there was no change in the nature of the business conducted on the premises after the corporation was formed and that part of the rent was paid by a check of the corporation and it was accepted, cashed and the proceeds retained. The judgment in favor of Schmitz was affirmed. Peacock v. Feltman, 243 Ill App 236 (1927), was also an appeal from a judgment for the defendant in a forcible detainer action. The lessors contended that the lessees breached the lease by forming a new corporation which conducted its business on the leased premises. The court termed this a "technical breach of the lease." The lessors had accepted rent from the new corporation for a number of months and it was held that the breach was waived by them and that they were estopped by their own conduct from asserting the breach as a ground for forfeiture. The court stated that the general rule was expressed in Webster v. Nichols, 104 Ill 160 (1882):

16

"Any act done by a landlord, knowing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his tenant, is a waiver of such forfeiture. . . . The receipt of rent subsequently accruing from the tenant by the landlord is such an act, and the forfeiture thereby waived."

 In the present case there was no concealment of the corporation from the lessors and there was no change in the business conducted on the premises. It further appears that the original lessor accepted rent from the corporation for a considerable period of time and that the plaintiff-lessor accepted it from the corporation for the two months preceding the expiration of the lease. If the contentions of the defendant are correct, there was but a technical breach of the lease which would not justify the forfeiture ordered by the trial court. The contentions also answer the plaintiff's claim that no privity of interest existed between itself and the corporation. The contentions created a genuine issue of material fact as to whether there was a waiver by the original lessor.

 The complaint, affidavits and exhibits raised genuine triable issues of material fact and the plaintiff was not entitled to judgment as a matter of law. The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

SCHWARTZ and McNAMARA, JJ., concur.