John Kokenes *et al.*, Plaintiffs-Appellees, *v.* Cities Service Oil Company, Defendant and Third-Party Plaintiff-Appellant.—(Anthony Oil Company, Third-Party Defendant-Appellee.)

(No. 59077; )

First District (1st Division)—November 27, 1974.

Samuel Morgan and Arnold J. Karzov, both of Chicago, for defendant-appellant.

Tom L. Yates, of Chicago (Carl E. Abrahamson, of counsel), for plaintiffs-appellees.

Richard J. Short, of Chicago, for defendant-appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiffs, lessors of a gasoline service station and car wash to the defendant Cites Service Oil Company, after a jury trial, recovered a judgment for $25,000 against said lessee, which, in turn, recovered a third-party judgment for $8,025 against its sublessee, the Anthony Oil Company. The defendant and the third-party defendant appeal. We conclude that the said lessee is not liable to the lessors and therefore reverse both judgments, without remandment.

On January 10, 1956, the plaintiffs, John and Sophie Kokenes (hereinafter lessors), entered into a written lease with the Cities Service Oil Company (hereinafter Cities Service) of the premises at 5036 West 26th Street, in Cicero, Illinois, consisting of a gasoline service station and a car-wash facility. The lease ran for an initial period of 10 years (June 1, 1956-May 31, 1966) with an option to renew for another 5 years. The lease recognized that subleases and assignments could be made but did not require the lessor's approval of such subleases or assignments. Said lease also expressly provided (in paragraph 8) that,

> "Lessor agrees to place and keep all improvements leased hereunder in good operating condition and to paint, replace and reconstruct any improvements which *without the fault of Lessee* may be destroyed or injured by fire or other casualty or become worn or otherwise no longer properly useful and efficient; * * *"

and (in paragraph 11) that,

> "* * * Upon the termination hereof Lessee shall surrender the demised premises in as good condition as when received, reasonable wear and tear and loss by fire, casualty *or by causes not the fault of Lessee, excepted.* * * *" (Emphasis ours.)

The first subtenant was the lessor, John Kokenes, who operated the station and car wash for 1 year. Other subtenant operators followed, but he continued to visit the premises several times a week, purchasing gas and a car wash and was always familiar with its operation.

When the 10-year period expired the lease was extended for another 5 years and Cities Service then entered into a written sublease to the Anthony Oil Company (hereinafter Anthony), which lease ran from June 1, 1966, until May 31, 1971, and included a "yield-back" provision providing for the return of the premises to Cities Service at the expiration of the lease "in good order and condition, reasonable wear, tear and use excepted."

From that time on, Anthony sublet the premises to various individuals who operated the station and car wash under oral leases.

In late April and early May of 1971, the premises were being operated by Ken Brown and Larry Brown, his father, under an oral arrangement with Anthony and all employees were hired by them, not by Cities Service or Anthony.

About May 1, 1971, a number of young men entered the premises while they were not in operation and vandalized them by tearing up the roof, breaking windows and hauling pipes, chains and motors away in a truck and trailer. Only one of these persons was specifically identified as being "Jim," an employee of Ken Brown, one of the operators put in possession by Anthony. The others were generally identified as boys who worked or had worked at the car wash. Neither Cities Service nor Anthony ever attempted to repair the premises, and they remained vacant to the end of the term.

The lessors then sued Cities Service for damages for failure "to surrender the premises in as good condition as when received." Cities Service, in turn, brought in its sublessee, Anthony, on a third-party indemnity action.

The case was tried before a jury and, after motions by Cities Service and Anthony for directed verdicts had been made and denied, a verdict for $25,000 was returned in favor of the lessors against Cities Service. A verdict was also returned in favor of Cities Service against Anthony for $10,000. Judgments were entered on said verdicts and the usual post-trial motions, including motions by Cities Service and Anthony for judgments notwithstanding the verdicts or for a new trial, were filed. Cities Service's third-party judgment against Anthony was cut from $10,000 to $8,025 but all other motions were denied and these appeals followed.

Many extremely complex and ingenious arguments are made by the various parties but, in our considered opinion, only one relatively simple issue is determinative, *i.e.*: Under the specific "yield-back" covenant here involved, is Cities Service liable to the lessors for damages done to their premises by said vandals?

We answer this in the negative and therefore reverse both judgments, without remandment.

■■ At common law, in the absence of an express provision to the contrary in the lease, the tenant was obliged to yield back the premises at the end of his term in the same condition as when received, ordinary wear and tear excepted. As was said in *Leavitt v. Kostel* (1961), 32 Ill.App.2d 313, 317, 177 N.E.2d 882:

> "The undertaking of the tenants to yield back the premises at the termination of the lease is a customary clause which, insofar as it excepts reasonable wear and tear, is expressive of the common law."

See also 49 Am. Jur. 2d *Landlord and Tenant* § 939, at 913-914 (1970); 51C C.J.S. *Landlord and Tenant* § 408, at 1050 (1968); 24 I.L.P. *Landlord and Tenant* § 292, at 480 (1956).

Under such a relationship, a lessee might be held liable for damages to the leased premises caused by the negligence or even deliberate acts of a sublessee or even a stranger, even though the lessee was not himself at fault and may not even have known of such acts. See 49 Am. Jur. 2d *Landlord and Tenant* §§ 501, 970, at 483, 943 (1970); *McGaff v. Scrimshire* (Tex. Civ. App. 1913) 155 S.W. 976, 977; *Dixie Fire & Casualty Co.* v. *Esso Standard Oil Co.* (1965), 265 N.C. 121, 143 S.E.2d 279, 282-283, 284-285.

In the case at bar, however, the written lease between the lessors and Cities Service expressly provided (in paragraph 8) that:

> "Lessor agrees to place and keep all improvements leased hereunder in good operating condition and to paint, replace and reconstruct any improvements which *without the fault of Lessee* may be destroyed or injured by fire or other casualty or become worn or otherwise no longer properly useful and efficient; * * *"

and (in paragraph 11) that:

> "* * * Upon the termination hereof Lessee shall surrender the demised premises in as good condition as when received, reasonable wear and tear and loss by fire, casualty *or by causes not the fault of Lessee, excepted.* * * *" (Emphasis ours.)

■■ It is well established that, in construing a written lease, words used are to be given their commonly accepted meaning and, in the words of our supreme court in *Szulerecki v. Oppenheimer* (1918), 283 Ill. 525, 532, 119 N.E. 643:

> "* * * In the construction of a lease every part must be construed with reference to all other portions of the lease and so that every part may stand, if possible; and no part of it, either in words or sentences, shall be regarded as superfluous or void if it can be prevented. *Morris Co. v. Southworth,* 154 Ill. 118."

This same view was expressed in *Leavitt v. Kostel* (1961), 32 Ill.App.2d 313, 318, 177 N.E.2d 882, as follows:

> "* * * We must favor a construction which would regard neither paragraph as superfluous. (Lewis v. Real Estate Corp., 6 Ill.App.2d 240, 127 N.E.2d 272; Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100.)"

See also 49 Am. Jur. 2d *Landlord and Tenant* §§ 963, 969, 973, at 938, 943, 945 (1970); 51C C.J.S. *Landlord and Tenant* § 409, at 1051-1052 (1968); *Brenzel v. Kirschner* (1906), 128 Ill.App. 136, 138; *Weill v. Cen-*

*tralia Service & Oil Co.* (1943), 320 Ill.App. 397, 401, 51 N.E.2d 345; *Bradley v. S. S. Kresge Co.* (7th Cir. 1954), 214 F.2d 692, 694.

As a result, Cities Service can only be held liable for such damages as are here involved if the facts establish that they were caused by "the fault of Lessee."

Most of the young men who vandalized the premises about the first of May, 1971, were generally identified only as boys who worked or had worked at the car wash and one of them, specifically identified only as "Jim," was apparently an employee of Ken Brown, one of the operators put in possession by Anthony.

Even were we to take the view (which we do not quite reach) that Cities Service is responsible not only for the actions of its own employees acting within the scope of their duties but is also responsible for the actions of any of its sublessees' employees acting within the scope of their duties, it is obvious in the case at bar that, in entering the premises when they were not in operation, and in vandalizing them by tearing up the roof, breaking windows and hauling pipes, chains and motors away in a truck and trailer, said persons had completely abandoned the business of their employer and were, on their own, committing malicious, wanton, willful acts which would in no way further the interests of their employer.

The law in such a situation is capsulized in 1 I.L.P. *Agency* § 183, at 790 (1953), as follows:

> "*Wanton, willful, and malicious acts.* A principal is liable for torts which are willfully, wantonly, or maliciously committed by an agent acting under the authority or direction of the principal. Where, however, the agent abandons the business of the agency and commits an act outside the scope of his authority or employment in a wanton, willful, or malicious manner, the principal is not liable therefor."

In the early (1849) case of *Johnson v. Barber,* 10 Ill. 425, our supreme court, at page 430, said:

> "* * * If one of the defendants, while engaged in the prosecution of the business of the other, carelessly or negligently set fire to the prairie, or even purposely, with a view to benefit or protect the interests of the employer, the latter would be liable for the consequences; but if he set out the fire from motives of malice or wantonness, the principal would not be liable, for that would be an abandonment of the business of the agency."

This was followed (in 1851), by *Tuller v. Voght,* 13 Ill. 277, where the court, at page 285, said:

"We look upon the rule of the common law as well settled, that the master is not liable for the wilful trespasses of the servant, which are not committed in furtherance of the business of the master. McMorris v. Crickett, 1 East, 106. This principle has already been adopted by this court, in the case of Johnson v. Barber, 5 Gilman, 425. That action was against the master and servant jointly, and the court said, 'If one of the defendants, while engaged in the prosecution of the business of the other, carelessly or negligently set fire to the prairie, or even purposely, with a view to benefit or protect the interests of the employer, the latter would be liable for the consequences; but if he set out the fire from motives of malice or wantonness, the principal would not be liable, for that would be an abandonment of the business of the agency.'"

To the same effect, see *Sawyer v. Martins* (1888), 25 Ill.App. 521, 523; *Callahan v. Hyland* (1895), 59 Ill.App. 347, 349; *Chicago Consolidated Bottling Co. v. McGinnis* (1899), 86 Ill.App. 38, 49; *Mallory v. Day Carpet & Furniture Co.* (1927), 245 Ill.App. 465, 470; and *Bremen State Bank v. Hartford Accident & Indemnity Co.* (7th Cir. 1970), 427 F.2d 425, 428.

■■ And where, as here, it is obvious that the acts of vandalism could not reasonably be considered as being within the scope of their employment, the court should so hold as a matter of law. In *Boehmer v. Norton* (1946), 328 Ill.App. 17, 65 N.E.2d 212, this court, through Mr. Justice Burke, at page 24, pointed out that:

"While in many instances the scope of employment is a question for the jury, yet where reasonable men could not come to a conclusion from the evidence that a servant was acting within the the scope of his employment, it is the duty of the court to hold that as a matter of law, he was not so acting."

■■ We therefore conclude and hold that, under the specific "yield-back" covenant here involved and the uncontroverted evidence in this case, Cities Service is not liable to the lessors for damages done to their premises by said vandals.

We therefore reverse both judgments without remandment.

Judgments reversed.

EGAN, P. J., and GOLDBERG, J., concur.