Paul GROSSINGER and Irwin
Grossinger, Plaintiffs,

v.

FRED HARVEY, INC., a Delaware
Corporation, Defendant.

No. 73 C 2968.

United States District Court,
N. D. Illinois, E. D.

July 30, 1975.

Burton Y. Weitzenfeld, John F. McClure, Michael R. Turoff, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for plaintiffs.

Stuart S. Ball, Thomas F. Ryan, Nathan P. Eimer, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Commencing in 1957, defendant Fred Harvey, Inc.,[1] leased and operated the Kungsholm Restaurant and its famed puppet opera from plaintiffs' predecessor in interest, Kungsholm Restaurant Company, Inc. In 1968 plaintiffs acquired all of Kungsholm's lessor interests. When defendant terminated the lease in 1972 it returned only a portion of the opera puppets and equipment to the plaintiffs and those, according to plaintiffs' complaint, were in such a condition as to be worthless. The parties have, on a stipulated record, presented the issue of whether this conduct violated the written lease agreement, rendering defendant liable to plaintiffs for money damages. This memorandum decision on the issue of liability constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a). Jurisdiction is present under 28 U.S.C. § 1332 (1970). The plaintiffs are Illinois citizens, the defendant is a Delaware corporation with its principal place of business in California, and the amount in controversy exceeds $10,000.

Three steps are required to decide whether defendant is liable under the lease. First, the extent and nature of defendant's obligations under the lease must be decided. Second, defendant's conduct must be determined. Finally, it is necessary to decide whether defendant's conduct violated its duties under the lease. In addition, defendant has raised the affirmative defenses of estoppel and laches which need be considered only if plaintiffs prevail on the basic issue of liability.

▮ The following rules of construction provide a useful background.[2] A lease should be construed in its entirety, with its language given a usual and not a strained meaning. *Kokenes v. Cities Service Oil Co.*, 24 Ill.App.3d 483, 321 N.E.2d 338 (1st Dist. 1974); *Harvey v. Rolands of Bloomington*, 94 Ill. App.2d 444, 237 N.E.2d 540 (4th Dist. 1968). The goal of lease interpretation should be to reconstruct the intention of the parties at the time of the formation of the lease. *American National Bank and Trust Co. v. Lembessis*, 116 Ill.App. 2d 5, 253 N.E.2d 126 (1st Dist. 1969); *O'Fallon Development Co. v. Reinbold*, 69 Ill.App.2d 169, 216 N.E.2d 9 (5th Dist. 1966). If the provisions of the lease are ambiguous, extrinsic evidence concerning the position of the parties, surrounding circumstances, and objectives of the parties at the time of the formation may also be considered. *Dasenbrock v. Interstate Restaurant Corp.*, 7 Ill.App.3d 295, 287 N.E.2d 151 (5th Dist. 1972).

### The Lease Provisions

The intent and purpose of the parties in making the lease is set out in Article

---

1. Defendant has undergone a reincorporation which is not material to the outcome. At the time the lease was executed it was Fred Harvey, a New Jersey corporation. Subsequently it became Fred Harvey, Inc., a Delaware corporation.

2. Illinois provides the rule of decision under 28 U.S.C. § 1652 and *Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

VIII, Sec. 2, "Manner of Operation." In that section, defendant covenants to

> continue the operation of a restaurant business on the Demised Premises and to operate a first-class restaurant of the character and reputation as heretofore conducted and operated on the Demised Premises by Lessor.

The lease does not specifically require that lessee operate the puppet opera, but the parties have stipulated that defendant did operate it in conjunction with the restaurant until 1971. Furthermore, the opera contributed to the "character and reputation" of the Kungsholm Restaurant. Accordingly, it was an integral part of the restaurant business, the operation which was to be "continue[d] . . . on the Demised Premises." [3]

To effectuate the purpose of running that restaurant business, Kungsholm leased to defendant not only the building which housed the restaurant, but all restaurant equipment and also the items used in the puppet opera. The entire subject matter of the lease is described in Article I. It includes a legal description of the land,

> . . . together with all buildings and improvements now or hereafter located thereon including all furniture, furnishings, fixtures, equipment, silverware, china and objects of art (specifically excepting, however, all furniture, furnishings, objects of art and personal effects which are located above the second floor), also all property and equipment used in the production of the puppet opera, including without limiting the generality of the foregoing all puppets, costumes, scenery, music reproduction machines, tape recordings, licenses, patents, programs and all records, all as more particularly described on Exhibit A which is attached hereto and by refer-

ence made a part hereof (all of which is sometimes hereinafter referred to as the "Demised Premises").

Two articles of the lease contain lessee duties regarding the care and maintenance of the leased property. The controlling issue in the case is which if either, of the provisions should be construed to define defendant's duties regarding the puppets and opera equipment, for neither of them does expressly. Indeed, the puppets and opera equipment are specifically mentioned only twice in the lease: the above quoted description in Article I and in Article XIII which grants defendant an option to purchase, *inter alia,* "all personal property . . . including . . . puppets and music reproduction machines . . . ." [4]

Article V is entitled "Use and Maintenance of Demised Premises and Property" and provides in material part as follows:

> *Section 1.* Harvey agrees to keep the Demised Premises and the furniture, furnishings, fixtures and equipment itemized on Exhibit A in a clean and wholesome condition . . . . Harvey agrees to replace any furniture, furnishings, fixtures or equipment when necessary or desirable, provided that [they] are then useful and necessary to the conduct of its business. Harvey shall not be required to replace any items of furniture, furnishings, fixtures and equipment which become obsolete and are no longer used or useful in the operation of its business. . . .

Exhibit A is an exhaustive inventory of Kungsholm's personal property which was leased to defendant under Article I. It is separated into three sections: "Puppet Opera Inventory", "Fine Arts Inventory", and "Inventory Listing

---

3. Under Article XV, Section 2 of the lease "The parties recognize[d] and acknowledge[d] that 'Kungsholm' has a nation-wide reputation as a high quality restaurant and that accordingly many of its customers come considerable distances to patronize it."

4. As noted, *infra,* there is a provision in Article X, Section 1, warranting defendant's use of "all licenses and patents used in the puppet opera."

Sheet". The latter contains chairs, tables, cooking equipment, bar equipment and the like. The "Fine Arts Inventory" lists paintings, ornamental lighting fixtures, china plates and figurines, etc. The "Puppet Opera Inventory" lists over 500 puppets for eleven operas: Tosca, Faust, Pagliacci, Rigoletto, Cavalleria Rusticana, La Boheme, Carmen, Trial by Jury, Hansel and Gretel, Madam Butterfly, and La Traviata. Each piece of scenery, furniture, property and recorded musical score is separately listed including such small items as "Holy Water Basin", "3 sets of Cannon Balls", "Jester's Stick" and "Prisoner's Chains". Nothing on Exhibit A is expressly labeled "furniture, furnishings, fixtures and equipment." Accordingly, as that collective term is read in Section 1 of Article V it must embrace everything itemized on Exhibit A including the puppets and opera equipment.

There is some difficulty with this interpretation of the term "furniture, furnishings, fixtures and equipment" because the definition of "Demised Premises" contained in Article I separates "all property and equipment used in the production of the puppet opera" from other "furniture, furnishings, fixtures and equipment." But the lease is not a model of pellucid drafting, which is why the parties are here. In fact, Article I admits of ambiguities with its provision that its broad definition of the subject matter of the lease is "sometimes hereinafter referred to as the 'Demised Premises.'" Accordingly, that term does not always refer to all of the property listed in Article I; each time it is used it must be interpreted in its particular context and in light of the totality of the lease agreement. And so it is with "furniture, furnishings, fixtures and equipment," which, for the reasons previously stated, includes the puppets and opera equipment in the context of Article V.

Thus Article V imposes on defendant an obligation to keep the puppets and opera equipment in a "clean and wholesome condition" and "to replace [them] . . . when necessary or desirable, provided [they] are then useful and necessary to the conduct of its business" but defendant "shall not be required to replace any . . . [of them] which become obsolete and are no longer used or useful in the operation of its business . . ."[5]

Plaintiffs also contend that Section 2 of Article X defines defendant's obligations in regard to the puppets and opera equipment at the termination of the lease. Article X is entitled "Possession of Demised Premises" and provides in material part:

*Section 1.* Lessor shall furnish Harvey . . . a title policy of the Chicago Title and Trust Company showing that the Demised Premises are owned by Lessor free and clear . . . . Harvey . . . shall and may peaceably have and enjoy the Demised Premises . . . for the term hereof, and Lessor will warrant and defend Harvey in the peaceful and quiet enjoyment of the Demised Premises and the furniture, furnishings, fixtures and equipment, and all licenses and patents used in the puppet opera.

*Section 2.* Harvey convenants . . . that upon the termination of this lease Harvey will at once surrender and deliver to Lessor possession of said Demised Premises in good condition and state of repair, ordinary wear and tear and fire or other casualty excepted.

Here the uncertainty is whether the term "Demised Premises", as used in Section 2, refers to the puppets and opera equipment or only to the realty and building.

Clearly the term is used in Section 1 in the restrictive sense of realty and building for it is only in respect to the lessor's interest in that property that the Chicago Title and Trust Company would issue a title policy. Furthermore,

5. Section 2 of Article V deals expressly with the lessee's duty to maintain the building.

in Section 1 "furniture, furnishings, fixtures and equipment, and all licenses and patents used in the puppet opera" are treated in the conjunctive with "Demised Premises" in contrast to Article I which treats furniture, etc., and the puppet opera paraphernalia as being included in the "Demised Premises".

Section 2 of Article X upon which plaintiffs rely refers to "said Demised Premises". A search for the antecedent to the "said" leads directly to Section 1 of the same article where the term is used in the restrictive sense. Accordingly, if the term as used in Section 2 were to be interpreted solely within the context of Article X it would be narrowly construed so as to exclude the puppets and opera equipment.

But that is not the only setting for its interpretation. The totality of the lease must be considered. Section 2 of Article X is vital to the lease for it provides for the ultimate: its termination. Certainly the parties did not contemplate that, at the conclusion of the lease, defendant could retain either the "Demised Premises" in its restrictive sense or the puppets and opera equipment. At the very least, upon termination defendant was obliged to surrender or account for to plaintiffs all that had been leased under Article I subject to its undertakings of maintenance and use under Article V and its common law obligation not to intentionally or negligently cause damage to the leased property other than ordinary wear and tear. *Gula v. Gawel*, 71 Ill.App.2d 174, 218 N.E.2d 42 (1st Dist. 1966). And that is all Section 2 of Article X purports to cover if it is construed to include the puppets and opera equipment. Thus, it is more in keeping with the entire lease to interpret "Demised Premises" as used in Section 2 of Article X in the all inclusive sense it is used in Article I, and "sometimes" thereafter, so as to include the puppets and opera equipment.

## Defendant's Conduct

The parties have submitted a stipulation of facts which is a model of brevity. They have agreed that defendant operated the puppet opera in conjunction with the restaurant until 1971. From time to time the repertoire was changed in response to apparent changes in the preferences of its restaurant customers by the elimination of certain unspecified productions and the addition of new unnamed ones. In connection with the changes in the repertoire, existing puppets were converted to new roles "or cannibalized" [6] to make new puppets and "in some cases, puppets, costumes, scenery and tape recordings were discarded." Stipulation ¶ 6.

In the fall of 1966 Kungsholm requested of defendant an inventory of the puppets then on hand. Stipulation, Exhibit B. Defendant responded that the puppets were included in the category of "furniture, furnishings, fixtures and equipment" which, under the terms of Section 1 of Article V of the lease need not be replaced if "obsolete and . . . no longer used or useful in the operation of [defendant's] business." *Id.* ¶ 7 and Exhibit C.

In January, 1968, in connection with the sale of the Kungsholm interests to plaintiffs, Kungsholm wrote defendant that it was obliged to furnish the purchasers with "a fairly current list of personal property owned by Kungsholm . . . and being utilized by [defendant] under the terms of the lease . . . Since the subject lease presupposes the substitution by [defendant] from time to time of worn out equipment, etc., [we] assume that your company has an inventory of machinery and equipment, furniture and fixtures and the fine art items on the premises which belong to Kungsholm. . . ." *Id.* ¶ 8 and Exhibit D.

Defendant responded that an inventory was not available since the lease

---

6. The American Heritage Dictionary of the English Language: "To remove serviceable parts from [a given item] for use in the repair of other equipment."

"does not provide for 100% 'substitution . . . of worn out equipment, etc.' but rather provides for the replacement, when necessary, of only such items as are currently used, useful and necessary to the conduct of the business. . . . When the lease was entered into in 1957 it was understood by Mr. Chramer [Kungsholm's president] . . . that . . . there would be improvements and changes in the design of the equipment itself, and probably some alterations in the character of the restaurant service and opera presentations in keeping with public demand." *Id.* ¶ 8 and Exhibit E.

In February, 1968, plaintiffs purchased the Kungsholm interests, including all puppets and equipment used in the production of the opera. *Id.* ¶¶ 9–11.

In 1971, defendant "for business reasons" discontinued the puppet opera. A dispute arose as to whether that constituted a breach of the lease. That dispute was settled and both parties were given the right to terminate the lease. Defendant elected to do so on September 30, 1972. *Id.* ¶¶ 12–14.

Thereafter another dispute arose regarding defendant's performance of its obligations on termination. That was settled except in regard to the property and equipment used in the production of the puppet opera. *Id.* ¶ 15.

Upon termination of the lease, defendant delivered to plaintiffs "without admitting any responsibility to do so, approximately 260 puppets and a quantity of scenery, costumes, and music reproduction equipment . . . [which] constituted all the property and equipment used in the production of the puppet opera remaining in existence at the time [defendant] discontinued the puppet opera productions." *Id.* ¶ 17. Plaintiff alleges that those puppets which were returned "had been so abused and mistreated that they were practically worthless." Complaint ¶ 7.

*Defendant's Liability*

Based on the foregoing facts and the previously quoted lease provisions the parties have stipulated that there are three "issues of law" to be decided:

█ 1. Were the puppets and opera equipment included in the phrase "said Demised Premises" in Article X, Section 2 of the lease so that defendant was "explicitly" obliged to return them upon termination "in good condition and state of repair, ordinary wear and tear . . excepted?" Stipulation, p. 5, Issue 1.

In essence, the response to this stipulated issue is in the affirmative. Defendant was obliged to return or account for the puppets and opera equipment, which were a part of the property leased by Article I, subject to its Article V undertakings and its common law duty not to intentionally or negligently damage the leased property other than as a result of ordinary wear and tear.

█ 2(a) Were the puppets and opera equipment included in Article V, Section 1's term "furniture, furnishings, fixtures and equipment" so that defendant "had no obligation to replace them if they 'became obsolete and . . . no longer used or useful in the operation of its business?' " *Id.*, Issue 2(a).

2(b) If so, did the puppets and equipment "become obsolete and no longer useful in the operation of the business when the defendant ceased putting on productions of the puppet opera?" *Id.*, Issue 2(b).

In general, the answer to issue 2(a) is that the puppets and equipment were subject to all of the previously quoted provisions of Section 1 of Article V.

At the outset of the lease defendant received an extensive collection of puppets, scenery, props and music relating to eleven of the world's great operas. Each group of puppets, scenery and props was an artistic expression in its own right with a commensurate intrinsic value. Under the terms of Article V, Section 1, defendant was obliged to care

for and maintain the puppets and equipment. Because the parties have settled the question of defendant's obligation to continue production of the opera, it must be assumed that defendant could discontinue productions or add new ones. To the extent that a particular puppet was suitable for another role if attired in a different costume, the puppet could be so adapted. But discontinuance of Hansel and Gretel and the presentation of a new production of Romeo and Juliet would not justify defendant in either discarding the puppets from the former or, alternatively, cannibalizing them into new puppets for the latter.

Under all of the provisions of Section 1 of Article V, defendant was obliged to maintain all of the puppets and equipment in good order until defendant discontinued using them. In those circumstances defendant was not obligated to replace those puppets which were not in use but it was obliged to retain them in the condition they were in when their use was discontinued. It could not cannibalize or discard them.

Insofar as the question of obsolescence is concerned, the burden is on the defendant to establish it and there is no evidence that speaks to the point other than the stipulated facts that the repertoire was first changed in response to customer preference and ultimately discontinued entirely "for business reasons." Assuming that those circumstances excused defendant from replacement, they did not give it a license to throw away or cannibalize.

■ Accordingly, under the terms of the lease (subject to the defenses discussed *infra*) defendant is liable for the damage to and loss of the puppets and opera equipment. The measure of damages will be the value of the puppets and equipment as of September 30, 1972 (the date the lease was terminated) in the condition they were in at the time their use was discontinued or they were discarded or cannibalized, if that condition was the result of ordinary wear and tear and not the result of the intentional or negligent conduct of defendant. In the event defendant intentionally or negligently damaged any of the puppets or opera equipment, the measure of damages will be the value of the puppets and equipment as of September 30, 1972 in the condition they were in when they were delivered to defendant at the commencement of the lease.

## The Defenses of Estoppel and Laches

Defendant has pleaded the affirmative defenses of estoppel and laches with respect to plaintiffs' claim.

■ Defendant first contends that plaintiffs are estopped from asserting that defendant breached a duty to them because they acquiesced in Harvey's contrary interpretation of the lease. Defendant relies on the previously quoted 1968 letter from defendant to Kungsholm at the time the latter requested an inventory from defendant. His letter, at best, demonstrates that Kungsholm should have known of defendant's interpretation of the lease. The letter reveals nothing of defendant's actual conduct in destroying and discarding the puppets and opera equipment and cannot indicate plaintiffs' acquiescence in that conduct. No other evidence supports defendant's theory of acquiescence and it has thus failed to meet its heavy burden of proving this affirmative defense. *See Jennings v. Bituminous Casualty Corp.*, 47 Ill.App.2d 243, 197 N.E.2d 513 (5th Dist. 1964).

■ Finally, defendant asserts that plaintiffs are barred by laches because they failed to object for eight years after they became aware of defendant's conduct. The only available evidence consists of all of the letters previously discussed. These letters show that Kungsholm only knew how defendant planned to interpret the lease. The letters do not show that Kungsholm knew how its tenant was treating the puppets and opera equipment. Hence, defendant has failed to demonstrate that plaintiffs' predecessor was sufficiently aware of its conduct to make a protest.

Judgment will enter in favor of plaintiffs and against defendant, Fred Harvey, Inc., a corporation, on the issue of liability. The cause will be set for a hearing on damages on motion of either party and is set for report on status September 17, 1975 at 10:00 a. m.