**Louis L. Lorillard, Plaintiff-Appellant, v. Field Enterprises, Inc., a Corporation, Defendant-Appellee.**

**Gen. No. 49,891.**

First District, Third Division.
November 18, 1965.
Rehearing denied December 9, 1965.

Posanski, Johannsen, Krohn & Jacobs, of Chicago, for appellant.

Robert F. Hanley and A. Daniel Feldman, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

■ Plaintiff, Louis L. Lorillard, instituted a libel action in the Circuit Court of Cook County to recover damages from the defendant, Field Enterprises, Inc. The lower court allowed defendant's motion to strike the complaint and dismiss the action and entered judgment for the defendant. For the purpose of this appeal we must accept the averments of the complaint as true. Plaintiff appeals to this court for a reversal of the judgment dismissing the action.

The basis of plaintiff's claim is an allegedly libelous article written about plaintiff by one Cleveland Amory, society columnist, and published in defendant's newspaper, The Chicago Sun-Times, on September 2, 1962. The article concerns the marital affairs of the plaintiff and the former Mrs. Lorillard. The relevant paragraphs for our consideration are:

> "Their divorce began four long years, 11 lawyers, three injunctions and seven lawsuits ago, when young Louis, who is in the travel business, decided to take a trip around the world, during which he apparently also decided to get a divorce—the first news of which greeted his wife on her return from a Jazz Festival in French Lick, Ind., when she found her New York apartment locked, the locks changed and a note stating that her clothes had been removed

to a hotel at which, in her absence, somebody had registered her. When Louis himself returned, he promptly went to Alabama and procured a 'quickie' divorce.

"This Mrs. Lorillard equally promptly fought—all the way to the Supreme Court—and won. Then this past summer Lorillard procured another quickie divorce, this time in Arkansas and immediately, in the great Newport tradition, remarried—a divorcee named Mrs. E. C. Gable. Mr. and the new Mrs. Lorillard then prepared to move into their cottage outside Newport in Middletown, called 'Paradise Farm.' The former Mrs. Lorillard, however, had already moved there ahead of them and had not only started a suit to set aside the Arkansas divorce but had also started a suit for bigamy.

"Visiting the former Mrs. Lorillard in her Paradise, we found her and her two teen-age children living in a state of siege—at her husband's order, she has no phone, no electricity and virtually nothing else. She was, however, again in the great Newport tradition, in high spirits. 'But,' she told us wryly, 'I don't think I'll ever give a candlelight dinner party again.'"

The specific statements of the article complained of by the plaintiff, as libelous and false are four in number: (1) That plaintiff went to Alabama and procured a "quickie" divorce from Mrs. Lorillard. Plaintiff alleges that this charges him with dishonesty and trickery, holds him up to public contempt, ridicule and scorn, and was published maliciously with intent to defame and injure him. (2) That after the first divorce was set aside by Mrs. Lorillard, he "procured another quickie divorce, this time in Arkansas." Plaintiff alleges that this charges him with trying to perpetrate some fraud upon the courts and upon Mrs. Lorillard, and implies that he was not a

truthful, honorable and upright man. (3) That the former Mrs. Lorillard "had started a suit for bigamy." Plaintiff alleges that in fact no complaint, suit or prosecution of any sort had or has ever been started by the former Mrs. Lorillard, and that by this statement defendant wrongfully, falsely and maliciously charged that plaintiff had committed the crime of bigamy. (4) That Mrs. Lorillard and her two teen-age children, after moving into plaintiff's cottage were "living in a state of siege—at her husband's order, she has no phone, no electricity and virtually nothing else." Plaintiff alleges that this charges him with the crime of wife and child abandonment, and also holds him up to public contempt, ridicule and scorn as a creature of low-grade who evaded his responsibility to his family. At the time, plaintiff alleges, he was paying $700 a month to his wife and children for their support, and, in addition, provided funds for the private schooling of the children for nearly four years prior to the date of this publication.

■ ■ Plaintiff's contention that the statements referring to his two divorces as "quickie" divorces, and therefore libelous, has no merit. In this day and age a reference to a divorce in a state of new domicile, procured more easily and quickly than one could be obtained in the state of former domicile, is commonly called a "quickie" divorce. The cases hold that in determining whether words are libelous per se, they must be taken in the sense which readers of common and reasonable understanding would ascribe to them, that is, in their ordinary and common acceptation. (LaGrange Press v. Citizen Pub. Co., 252 Ill App 482, 485.) Applying the above rule, it is apparent that the term "quickie" divorce is not libelous. The term is used often in everyday conversation to describe a particular type of divorce. The use of this term has become so common that it implies no fraud or dishonesty and therefore is not libelous of the plaintiff.

71

However, plaintiff is correct in his contention that the statement that Mrs. Lorillard had "started a suit for bigamy" is libelous per se in that it imputes a crime to the plaintiff. Bigamy is a crime. In the law of libel, any written or printed words which falsely charge one with the commission of a crime are libelous per se. (Cook v. East Shore Newspapers, Inc., 327 Ill App 559, 64 NE2d 751.) In order to constitute a libel, an article or publication need not technically charge a crime, but if the language used induces readers reasonably to believe that a crime has been committed by plaintiff the article is libelous. (Hunner v. Evening American Pub. Co., 175 Ill App 416.) In Hunner, supra, the plaintiff sued for libel, basing his claim on the words "Mrs. Hunner was divorced two years ago naming women in her bill." The facts were that plaintiff was the one who had filed for divorce charging desertion. Plaintiff alleged that this false and libelous statement charged him with the crime of adultery. The court agreed and in deciding for the plaintiff said at page 419 of the opinion: "In interpreting the language of an article to determine whether or not it is libelous, no different construction should be placed upon it than men of ordinary affairs would give it."

In determining whether a published article is libelous per se, the words must be taken in the sense which readers of common and reasonable understanding would ascribe to them, that is, in their ordinary and common acceptance. Hotz v. Alton Tel. Printing Co., 324 Ill App 1, 57 NE2d 137. To determine whether a written statement is libelous per se, the words of the written or printed statement shall be considered in their ordinary meaning. White v. Bourquin, 204 Ill App 83.

By using the ordinary reader test advocated in Hunner, supra, and reiterated in subsequent cases, the commission of the crime of bigamy has been imputed to the plaintiff

by the words "started a suit for bigamy." No innuendo is needed to impute the crime to plaintiff.

While the publication by the defendant does not state whether or not Mrs. Lorillard had told the author of the article that she had actually started a suit for bigamy, nevertheless, had the article so shown, it would not relieve the defendant of the duty to check into the truth of the statement. Publication of libelous matter, although purporting to be spoken by a third person, does not protect the publisher, who is liable for what he publishes. Cobbs v. The Chicago Defender, 308 Ill App 55, 31 NE2d 323. Even had Mrs. Lorillard told the defendant that she had started such a suit, it would not protect the newspaper from liability for untruths. It is not a defense to an action of libel to show that it is merely a repetition of what some other person may have said. Kulesza v. Alliance Printers & Publishers, Inc., 318 Ill App 231, 47 NE2d 547.

A newspaper has a right to publish facts and make fair comment thereon. If it goes beyond that, and the article is of and concerning the plaintiff, and it is not susceptible of an innocent construction, it is libelous. Inasmuch as the words are libelous per se, there can be no defense of fair comment and criticism. Cooper v. Illinois Publishing & Printing Co., 218 Ill App 95; Belt v. Tribune Co., 6 Ill App2d 489, 128 NE2d 638; Cook v. East Shore Newspapers, Inc., supra. Since the article imputed a crime to the plaintiff, the language is per se libelous.

Defendant cites the case of Trembois v. Standard Ry. Equipment Mfg. Co., 337 Ill App 35, 84 NE2d 862, in support of its argument that a statement that a suit has been begun is not and, as a matter of law, cannot be a statement of guilt. A close reading of the Trembois case reveals it has nothing to do with the beginning of a suit, but rather concerns a criminal arrest. However,

the principle has no application to this case where suit was never filed or begun by Mrs. Lorillard. If suit had been filed any statements concerning these facts would have been privileged as fair comment concerning a judicial proceeding. This is not the case before us, however.

■ Defendant next contends that the charge of bigamy is an unreasonable construction of the article considered as a whole, and cites the case of Clark v. Tribune Co., 11 Ill App2d 420, 137 NE2d 664. In that case Mrs. Clark alleged as libelous the words "In 1935 Mrs. Clark was named in a $1,000,000 alienation of affection suit." The court held the language nonlibelous because in reading the entire article, the reader would see that Mrs. Clark had obtained a divorce in 1937 on the ground of her husband's infidelity. The implication, according to the court, was that she was therefore a dutiful wife, and would be so looked upon by readers of the article. The court said that the alleged libelous words must be considered in the context of the entire article.

The Clark case is easily distinguishable on its facts from the instant case. There plaintiff's claim of libel was dispelled by another statement imputing that she was of good character. There were two inconsistent statements referring to the complainant's character; the court elected to adopt the statement which implied she was of good character. This is not possible in the instant case. Nowhere in the article is there language to dispel the charge of bigamy. The entire article is disparaging to the plaintiff and strengthens his charge of libel when read as a whole. We have examined the article as a whole, as defendant suggests we should do. It is our conclusion that it supports the plaintiff's claim that he has been charged with the crime of bigamy, a per se libelous statement.

■ Defendant attempts to distinguish the Hunner case, supra, relied on by the plaintiff by saying that there the statement was held libelous because it reported

74

the result of an action, rather than the beginning of an action, as in the instant case. Defendant contends that since the article did not say that plaintiff had lost a suit for bigamy, only that Mrs. Lorillard had started a suit for bigamy, it could not be libelous. If a statement referring to a suit is libelous and false, it does not matter that it refers to the beginning of a suit rather than the result of a suit. The normal reader of an article can just as easily reach an opinion as to the guilt of a party by reading that suit was started against him, as by reading the result of the same action.

██ Defendant next contends that there is no civil action for bigamy and therefore under a rule that everyone is presumed to know the law, a statement of an impossible act cannot be libelous. However, the article does not state that Mrs. Lorillard had filed a civil suit for bigamy but that she had started a suit for bigamy. The normal reader could well think that these words meant that she swore out a criminal complaint against the plaintiff, and in this way "started" a suit for bigamy. The natural inference of that statement is to charge plaintiff with a crime. The fact that there is no civil action for bigamy does not defeat plaintiff's claim.

Lastly, defendant contends that plaintiff's construction of the language is barred by the innocent construction rule, and cites the case of John v. Tribune Co., 24 Ill2d 437, 181 NE2d 105, to sustain this point. The facts of that case were that a woman named Dorothy Clark was arrested at a certain address on a charge of immoral activities. The defendant published two statements in its newspaper that the woman arrested was also known as Eve Spiro and Eve John. At the time, a woman resided at the same address whose maiden name had been Eve Spiro and whose name at the time, though divorced, was Eve John. She was the only person with that name at the address, but was in no manner involved in the raid nor in the immoral activities. The real Eve John

75

filed a suit for libel, and the Illinois Supreme Court held that the publication was not libelous. The court based its decision on two points. First, the court held that the allegedly libelous statement was not "of and concerning" the plaintiff. The first name given is clearly the "target" of the publication and the alias is given merely as the false name, and the plaintiff cannot contend that the publication is "of and concerning" her, no claim being made that the publication referred to the plaintiff directly. Secondly, the court said that plaintiff's construction of the article was not libelous of the plaintiff when the innocent construction rule is applied. At page 442 of the opinion the court cited the rule: "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." The court concluded that since the statements were capable of being construed as referring only to Dorothy Clark, they were innocent publications as to the plaintiff, Eve John.

 Defendant's argument that the innocent construction rule should be applied here to defeat plaintiff's claim that he has been charged with the crime of bigamy is totally without merit. That rule tells us that words must be given their natural and obvious meaning, and only if capable of an innocent construction must they be so read. Giving the words "started a suit for bigamy" their natural and obvious meaning, as the rule dictates, it is apparent that plaintiff has been charged with a crime. We do not see how an innocent construction can be given to these words.

 However, an innocent construction can be given to the words "we found her and her two teen-age children living in a state of siege—at her husband's order, she has no phone, no electricity and virtually nothing else." Plaintiff alleges that these words are per se libelous in

that they, first, charge him with the crime of wife and child abandonment, and secondly, hold him up to public contempt, ridicule and disgrace.

In this state the crime of child abandonment is covered under two sections of the Illinois Revised Statutes of 1963; c 68, par 24, makes it a crime to abandon children under the age of 18 years, while c 23, par 2359, covers the abandonment of children under the age of 14 years. The allegedly libelous article refers to the "two teen-age children" of the plaintiff; their specific ages are not mentioned in the publication nor in the complaint. "Teenage" embraces children who are eighteen and nineteen years of age, and under the innocent construction rule that statement cannot be construed as charging the plaintiff with the crime of child abandonment. This interpretation is required by the case of John v. Tribune Co., supra, which states that if words are capable of an innocent construction, they must be so read. Applying this rule to the abandonment allegation, it is apparent that these words can be construed innocently. Also, since the publication showed that Mrs. Lorillard was divorced from the plaintiff at the time of the statement, he could not be guilty of abandoning her.

Likewise, the laws of Rhode Island, where the abandonment allegedly occurred, require a father to support his children under the age of 18 years, and it is a criminal offense for a father not to support such children. (General Laws of Rhode Island, 1956, Sections 11–2–1 and 15–11–5.) Hence, under either the Illinois laws or those of Rhode Island, this statement is susceptible of an innocent construction, and neither charges plaintiff with a crime, nor is it libelous as holding him up to public ridicule and contempt.

Defendant's last defense is based upon the rule stated in the case of New York Times Co. v. Sullivan, 376 US 254. There the court enlarged the privilege of the press by giving it immunity as to misstatements of

fact in regard to public officials, and in its reasoning placed great emphasis on the fact that since public officials had immunity in their official conduct and statements, the critics of official conduct should have a fair equivalent of immunity. There is not the slightest implication in the opinion that the rule there espoused should be extended to persons who are not public officials. This rule is confined to public officials.

 The last point that must be discussed relates to the issue of damages in cases where the words in question are found to be per se actionable. In order to recover punitive damages in a libel action some malice must be found. If the words are held to be per se actionable, the necessary malice is imputed from the words themselves; the law conclusively presumes malice in law, and general damages, without proof of loss or injury, are conclusively presumed. Cook v. East Shore Newspapers, Inc., 327 Ill App 559, 595, 64 NE2d 751. In the Cook case it was also pointed out that where the article is libelous per se there may also be malice in fact, and the court said: "Malice in fact is 'a formed design of doing mischief to another.' (First National Bank of Flora v. Burkett, 101 Ill 391, 394.) It is also defined as follows: 'actual malice or malice in fact, means a positive desire and intention to annoy or injure another person.' (36 Am Jur p 681.)" The existence of actual malice may be inferred where a defamatory publication is made without proper cause or excuse. Where malice in law or actual malice exists punitive damages may be awarded. Cooper v. Illinois Publishing & Printing Co., 218 Ill App 95; Hintz v. Graupner, 138 Ill 158, 27 NE 935.

 The plaintiff in the instant case may also recover actual or compensatory damages. If the words are libelous per se, it is not necessary to allege or prove special damages, both malice and damages being presumed. White v. Bourquin, supra; Hambric v. Field Enterprises, Inc., 46 Ill App2d 355, 196 NE2d 489. Al-

78

legations of special damage or actual malice are not essential where the matter alleged to defame is libelous per se. Estill v. Hearst Pub. Co., 186 F2d 1017 (7 cir). Actual or compensatory damages also include general damages such as mental suffering and injury to reputation, and these need not be proved by evidence. Van Norman v. Peoria Journal-Star, Inc., 31 Ill App2d 314, 175 NE2d 805.

The defendant contends that the words complained of do not constitute libel per se and therefore it was necessary for the plaintiff to not only allege actual malice, but also to allege with specificity some special damage. Since we have concluded that the words "started a suit for bigamy" are libelous per se, it is not necessary to further discuss the law relating to special damages.

Reversed and remanded.

DEMPSEY, P. J. and SCHWARTZ, J., concur.