William Coursey, Plaintiff-Appellant, v. The Greater Niles Township Publishing Corporation, an Illinois Corporation, Roland R. Moore, Jr., et al., Defendants-Appellees.

Gen. No. 50,920.

First District, Third Division.

March 9, 1967.

Rehearing denied April 6, 1967.

Edward G. Raszus and Gene J. Shapiro, of Chicago (Edward G. Raszus, of counsel), for appellant.

Hoellen & Willens, of Chicago (Sherwin Willens, of counsel), for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In an action for libel, summary judgment was entered for the defendants and plaintiff appeals on the ground that the pleadings present a genuine issue of fact which should have been tried. Plaintiff is a former patrolman in the employ of the Police Department of the village of Skokie, a suburb of Chicago. The charge of libel is based on an article printed in the September 17, 1964, edition of the "Skokie News," a weekly newspaper circulated principally in Skokie. It was owned and published by the corporate defendant and Moore. Sanders, who was a defendant and whose name appears in the title of the briefs, was not included in the notice of appeal and is not therefore a party to this appeal. The text of the article follows:

> "*Fire Coursey, Tell of Girl's Lie Test.*
> "The teenage girl responsible for having several charges leveled against Skokie Ptm. William Cour-

sey did take a lie detector test—and passed it with 'flying colors'—one day last week, reports Corporation Counsel Marvin Glink.

"This was not made public, however, until after the fire and police commission last Wednesday found Coursey guilty of all charges and ordered him discharged from the department.

"Coursey had been charged with unbecoming conduct, leaving his beat, leaving the village (both without permission) and failure to carry out a direct order.

"The commission's formal decision is not expected to be published until early next week, according to chairman Anthony Ross, who, incidentally, will be re-appointed to a new three year term by Mayor Greisdorf very shortly.

"Atty. Gene Shapiro, representing the policeman, indicated the case would be presented to the Circuit Court for trial if motions for a rehearing before the commission are denied.

"The charges stem from an incident at a Skokie bowling alley one Saturday last April when Coursey found several teens out after curfew, sent some of them home, but allegedly followed—in his squad— the girl as she dropped off a friend in Morton Grove, made immoral suggestions to the girl, then followed her into Lincolnwood."

The summary judgment was granted upon the pleadings and upon memoranda of law submitted by both parties. The pleadings consisted of an amended complaint and answer thereto. The amended complaint charged that defendants, intending to injure plaintiff's good name and livelihood and with knowledge that the article was false and with reckless disregard as to whether it was false or not, maliciously composed and caused

79

the article to be published in their newspaper; that the headline was printed in black type, *"Fire Coursey, Tell of Girl's Lie Test,"* and that defendants by this meant that plaintiff was "fired from his position with said police department"; that he was disreputable, depraved and of low morals and character and had been "fired for unbecoming conduct."

The defendants' answer admitted the publication of the article, denied any intention to injure the plaintiff, or that the article was maliciously published or that it contained scandalous and malicious libels. In addition an affirmative defense was filed averring that the defamatory construction placed on the article was not reasonable and that the news story was fair and privileged comment on a quasi-judicial proceeding. Following the filing of their answer, defendants made their motion for summary judgment.

The five charges made to the Fire and Police Commission against the plaintiff are as follows:

> "(1) Failure to obey a direct order to submit to a polygraph examination; (2) insubordination, resulting from plaintiff's refusal to submit to a polygraph examination; (3) conduct tending to bring the Skokie Police Department in disrepute, resulting from the alleged improper conduct complained of by the citizen; (4) a technical violation of leaving the assigned 'beat' and (5) a technical violation of failing to properly complete 'activity reports.' "

The Commission found the plaintiff guilty on four of the five charges, but made no finding on the third charge here involved. Its report on that aspect of the case is as follows:

> "3. On Charge #3, *no verdict is rendered.* While there was much testimony heard concerning the alleged incident, there was also conflict as to times,

locations, etc. The Commission, in general, believes that Officer Coursey's conduct on the night in question was unprofessional. He certainly should have handled the situation in a different manner. The Commission feels that there is no need to make a conclusive finding on Charge #3 in view of the decisions on the other charges. The Commission believes that good police procedure would require that an officer who detains juveniles on a curfew violation for any length of time should report the same in a proper fashion to his superiors." (Emphasis added.)

The statement in the article that plaintiff was found guilty on all charges was therefore incorrect.

■■ The amended complaint does not allege special damages. To state a case, plaintiff must therefore show that the printed matter in question was libelous per se, in which case damages are presumed. Lorillard v. Field Enterprises, Inc., 65 Ill App2d 65, 213 NE2d 1; Cook v. East Shore Newspapers, Inc., 327 Ill App 559, 64 NE2d 751. In a recent case this court concluded that "as a practical matter the categories of words which constitute libel per se will usually be those which, if spoken, were slander per se at common law." Reed v. Albanese, 78 Ill App2d 53, 223 NE2d 419. This aspect of the decision in the Reed case was based upon the holding in Whitby v. Associates Discount Corp., 59 Ill App2d 337, 207 NE2d 482, where the court adopted the prevailing point of view in the majority of jurisdictions equating the categories of words libelous per se to those which are slanderous per se. The court (at pp 340, 341) stated that those classes of words held actionable per se in Illinois are as follows:

> "1. Those imputing the commission of a criminal offense;

"2. Those imputing infection with a communicable disease of any kind which, if true, would tend to exclude one from society;

"3. Those imputing inability to perform or want of integrity in the discharge of duties of office or employment;

"4. Those prejudicing a particular party in his profession or trade."

The words alleged to be libelous in the instant case come within the third and fourth categories and hence plaintiff's amended complaint states a cause of action for libel per se.

■ Defendants argue that the words are capable of an innocent construction and hence that the action must fail. John v. Tribune Co., 24 Ill2d 437, 181 NE2d 105. In determining whether an article is libelous per se, the words must be taken in the sense which readers of common and reasonable understanding would attribute to them. Lorillard v. Field Enterprises, Inc., supra; Hotz v. Alton Tel. Printing Co., 324 Ill App 1, 57 NE2d 137. The only conclusion that can reasonably be drawn from the article in question is that the plaintiff was guilty of making immoral suggestions of a sexual character to a teen-aged girl. An innocent reading is not plausible, and summary judgment on this ground was improper.

■ Defendants further contend that they may avail themselves of the well-recognized privilege of reporting the proceedings of public hearings regardless of their defamatory content. The controlling principle is expressed in Restatement of Torts, sec 611, as follows:

"[a newspaper is privileged to report the activities of a] municipal corporation or of a body empowered by law to perform a public duty . . . although it contains matter which is false and defamatory, if it

82

is (a) accurate and complete or a fair abridgment of such proceedings, and (b) not made solely for the purpose of causing harm to the person defamed."

■ The rule as hereinbefore stated was adopted by the Illinois Supreme Court in Lulay v. Peoria Journal-Star, Inc., 34 Ill2d 112, 214 NE2d 746. In that case the court held that the defendant was privileged because the account in the newspaper was "an accurate and capsulized summation of the plaintiff's difficulty with the Peoria Health Department." Similarly, in Segall v. Lindsay-Schaub Newspapers, Inc., 68 Ill App2d 209, 215 NE2d 295, the court applied the decision in the Lulay case holding that the defendant was privileged to report proceedings in open court in connection with a pending criminal case where the plaintiff did not complain that the proceedings themselves were falsely reported. These decisions are distinguishable from the instant case, for here the defendants published what turned out to be an *inaccurate account* of the proceedings of the Fire and Police Commission. The error was therefore solely attributable to the defendants and hence the matter is not within the privilege hereinbefore discussed.

Finally, defendants contend that plaintiff's action is barred by the decision in New York Times Co. v. Sullivan, 376 US 254 (1964), which held that a State could not award damages to a public official in a suit for libel based upon defamatory criticism of his official conduct without proof that the defendant acted with actual malice or with reckless disregard of the truth. In that case it was held that the Chief of Police of Montgomery, Ala., was a public official. Since the decision in New York Times, supra, the court has had occasion to discuss more fully the concept of "public official." Rosenblatt v. Baer, 383 US 75, (1966). In that case the court reversed a libel judgment for the plaintiff which had been affirmed by the New Hampshire Supreme Court

after the New York Times decision and remanded the case for a new trial on the issue of whether the plaintiff was a public official. The court said (p 85):

> "There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. . . . Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."

The court also admonished the state courts against using state law guidelines to determine who is a public official, noting that the standards for a constitutional principle cannot "vary with state lines."

We must turn then to a consideration of the status of a patrolman. He is an important symbol of government, but the lowest in rank of police officials, and it cannot be said that he has "substantial responsibility for or control over the conduct of governmental affairs." But even if we were to consider him a public official, the complaint charges that the article was false and made with reckless disregard as to whether it was false or true and maliciously composed. This we consider to be within the exception as set forth in New York Times Co. v. Sullivan, supra, and Rosenblatt v. Baer, supra.

We conclude that it was error for the court to allow the motion for summary judgment. The judgment is reversed and the cause is remanded with directions to

take such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

SULLIVAN, P. J. and DEMPSEY, J., concur.