JOSEPH G. CATALANO *et al.*, Plaintiffs-Appellants, *v.* ROBERT C. PECHOUS *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 77-1472

Opinion filed December 19, 1978.—Supplemental opinion filed on denial of rehearing March 20, 1979.

Edward V. Hanrahan, of Chicago, for appellants.

James E. Gierach, of Gierach, Stambulis & Schussler, Ltd., of Oak Lawn, for appellee Robert C. Pechous.

Thomas G. Ryan and Donald B. Hilliker, both of Chicago (Isham, Lincoln & Beale, of counsel), for appellees Mark Fineman and Field Enterprises, Inc.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiffs, seven aldermen of the city of Berwyn (Berwyn), Illinois, appeal an order of the circuit court of Cook County denying their motion for summary judgment and granting summary judgments in favor of defendant Robert C. Pechous and defendants Mark Fineman and Field Enterprises, Inc. Defendant Pechous' statements, made while serving as Berwyn's city clerk and quoted in an article written by Fineman and published by Field, form the basis of this libel suit. The only issue on appeal is whether the trial court erred in denying the plaintiffs' motion for summary judgment and in granting the defendants' motions. We affirm as to defendants Fineman and Field, and reverse and remand as to defendant Pechous.

Prior to January 1976, Berwyn had its garbage collected by city employees. On December 19, 1975, the plaintiffs as trustees of Berwyn voted to advertise for bids from private scavenger firms and to open the bids submitted on January 12, 1976. On December 29, 1975, several representatives from private scavenger firms attended the Berwyn Public Works Committee meeting. Following the adjournment of this meeting, the regular city council meeting was held. Of the representatives attending the Public Works Committee meeting, only the three who had previously submitted bids remained for the regular council meeting. At this meeting the plaintiffs opened these firms' bids and accepted the lowest bid submitted by the Clearing Disposal Company (Clearing). The plaintiffs then voted to declare an emergency and create a $600,000 emergency appropriation for the private scavenger service. It was during this meeting that defendant Pechous first made the following allegedly libelous statement:

"Two hundred and forty pieces of silver changed hands—thirty for each alderman."

The controversial nature of the award of the contract to Clearing is reflected in the actions taken by other city officials and bidders shortly thereafter. On January 5, 1976, Thomas Hett, the city attorney, sent the council a letter stating that its action in declaring an emergency was illegal and questioning the wisdom of the change to a private scavenger firm. On the same day, Emil Vacin, Berwyn's mayor, vetoed the award of the contract to Clearing in a letter, stating that he found the plaintiffs' actions at the December 29 meeting "questionable [and] patently unfair." The mayor's letter further questioned why all of the prospective bidders who were present at the Public Works Committee meeting had not been told to remain for the regular meeting. A second letter from Mayor Vacin to

the plaintiffs vetoed the $600,000 appropriation. The plaintiffs' letter in response notified the mayor of their decision to override his veto. On January 12, 1976, Mayor Vacin returned the unsigned contract along with a letter reaffirming his veto on the ground that the contract was not in the best interest of the city.

The results of a survey of Berwyn residents favoring the retention of the city employees for garbage collection were sent to the mayor and to the plaintiffs by the Public Works Committee. The city employees charged that the plaintiffs' actions violated their collective bargaining agreement. One of the private scavenger firms planning to submit a bid by the original January 12 deadline notified the city of its intention to bring suit to have the December 29 bidding declared illegal. Ultimately, the circuit court threw out the December 29 bids and ordered the plaintiffs to readvertise.

Defendant Fineman began his investigation of the Clearing contract early in April 1976. During the course of his investigation, he reviewed the foregoing letters and documents, the minutes of the relevant meetings, and the contract. Before writing the article, defendant Fineman talked to the following people: John Van Tholen, Jr., a former Berwyn employee who had spoken in favor of the change to a private service and who had been employed by Waste Management, Inc. (WMI), the parent company of Clearing, within a month of the award of the contract; John DeBoer, the Clearing representative at the December 29 meeting; Joseph Sevick, whose occupation is not of record; Don Redicliffe, a WMI employee; Mayor Emil Vacin; a source whose name remains unknown; and a number of other persons as part of his general investigation of suburban garbage pickup services.

Defendant Fineman first spoke with defendant Pechous early in April. During the conversation, defendant Pechous made the following statements which were later quoted in the article:

> "Something smells in this contract more than garbage. * * * I said at the council meeting when the contract was first awarded that I think 240 pieces of silver changed hands—30 for each alderman. * * * There was just something suspicious about the way that contract was approved. * * * I've said all along that if it were ever discovered how that contract was really approved, there'd be some vacant chairs in the city council. * * * There are just too many unanswered questions in the contract. The whole thing was railroaded through, and we can't help but think there was some stronger motivation behind it."

Defendant Fineman's article entitled "Berwyn Trash Pact Raises Stink/Berwyn Garbage Agreement Raises Stink" appeared in the May 12-13, 1976, edition of *Suburban Week*, a weekly supplement to the then

Chicago Daily News and the Chicago Sun-Times published by defendant Field.

Defendant Fineman reported that the plaintiffs had vehemently denied having taken payoffs, each claiming that defendant Pechous' statements were politically motivated insofar as Pechous was the democratic candidate for State representative and all but one of the plaintiffs were republicans. Fineman further reported John Van Tholen, Jr.'s support of the Clearing contract, his appointment as Berwyn streets superintendent, the nullification of that appointment, and his subsequent employment by WMI. The article further stated that an inside industry source claimed that Van Tholen had been given the WMI job "as a reward for having made sure the Berwyn contract was given to Clearing." However, Fineman quoted Van Tholen's denial of these charges, and also reported the plaintiffs' denials that Van Tholen had influenced their decision in awarding the contract.

Fineman's article then reviewed the bids opened at the December 29 meeting. These bids were from C. Groot Automatic Disposal Company, Van Der Molen Disposal Company, and Clearing, and were $3.55, $3.20, and $3.15 per month per family respectively. Based on the Securities and Exchange Commission documents that he had reviewed, Fineman reported that the C. Groot Company was owned by John C. Groot, a WMI stockholder and one of WMI's eight founders. The article stated that a WMI spokesman had confirmed that Groot was one of its stockholders but had denied any connection between the two firms. However, Fineman also reported an inside industry source's claim that the Groot bid was never intended to be competitive with Clearing's bid.

In conclusion Fineman reported that the December 29 bids were thrown out and the plaintiffs ordered to readvertise for bids by Circuit Court Judge Francis Delaney. Reportedly this action was taken in response to suits filed against the plaintiffs by the Berwyn democratic administration officials and a private scavenger firm. Fineman went on to note that Clearing's second bid was still the lowest and that it had again been awarded the contract in February. However, the article continued stating that some Berwyn officials were considering turning over information on the award of the first contract to Federal authorities.

On June 28, 1976, plaintiffs filed a three-count libel complaint. Count I alleged that defendant Pechous' "240 pieces of silver" statement made at the council meeting and his other statements made to defendant Fineman were intended to lead his listeners to believe that the plaintiffs were bribed to vote for the contract or that they voted for personal gain in violation of their fiduciary duties of office. Plaintiffs further alleged that these statements were understood in that manner, were false, and were uttered with malice. Count II iterated the allegations of count I, alleged

that malice was the gist of the action, and sought punitive damages. Count III alleged that defendants Fineman and Field's article contained statements that accused the plaintiffs of taking bribes (Pechous' statements), attributed the employment of Van Tholen to the plaintiffs' illegal and improper action, and charged plaintiffs with further "suspicious" and illegal behavior. Count III further alleged that these accusations and implications were false and that the article was written and published knowing that such statements were false or with reckless disregard of their truth or falsity.

Defendant Pechous' answer generally denied the plaintiffs' allegations. Defendants Fineman and Field's answer admitted publishing the article but denied all other allegations. Defendants Fineman and Field also asserted as affirmative defenses that the article was published about public officials and was not published with knowledge of its falsity or probable falsity; that the article was devoted to the public interest; and that defendant Pechous' statements in the article were made at the Berwyn council meeting, and therefore the publication of these statements could not form the basis of a libel action against them.

On October 26, 1976, defendants Fineman and Field moved for summary judgment reasserting the foregoing privileges and contending that defendant Pechous' "240 pieces of silver" statement was an expression of opinion, and that all of the quoted statements were capable of an innocent construction. Defendant Fineman's affidavit stated that he did not believe any statements in the article were false.

On May 31, 1977, the plaintiffs responded to this motion and filed a cross-motion for summary judgment. The plaintiffs contended that the article and the statements of defendant Pechous were incapable of an innocent construction and that the article was not privileged because: (1) defendant Pechous' statements were made in his private capacity and were reported by the defendants three months after the fact, and (2) the constitutional privilege applies only to reports of the actions of public officials in the performance of their public duties and does not apply even then when the statements are libelous per se. The plaintiffs' cross-motion was supported by the affidavit of one of the plaintiffs, stating generally that defendant Pechous had no part to play in awarding the contract. The affidavits of three other plaintiffs filed on June 9, 1977, generally rebutted defendant Fineman's statement that he did not believe any of the statements to be untrue and stated that they believed that the article was published with reckless disregard of whether the statements within it were true or false.

On the basis of these pleadings, and defendant Fineman's answers to interrogatories, investigatory documents, and notes, the trial court granted summary judgment for defendants Fineman and Field on June 9,

1977. The court found that defendant Pechous' statements did not fall within the scope of *Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill. 2d 112, 214 N.E.2d 746 (reports of governmental acts and utterances), or *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385 (executive privilege), and that there was a question of fact as to whether the article was published with actual malice as defined in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. However, the trial court also found that the application of the innocent construction rule of *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148, rendered the statements in the article nonactionable. Accordingly, the court dismissed the action against defendants Fineman and Field and denied the plaintiffs' cross-motion.

On July 18, 1977, defendant Pechous also moved for summary judgment on the grounds that his "240 pieces of silver" statement was an assertion of opinion, that this and the other statements published in the article were capable of an innocent construction, and even if libelous, were privileged under the holdings of *New York Times* and *Blair*. Defendant Pechous' affidavit stated that he did not act with malice in making the comments, and that as city clerk he had exercised his constitutional right to inform the Berwyn residents of his opinion of the plaintiffs' actions.

The plaintiffs again filed a cross-motion for summary judgment asserting that defendant Pechous' statements were incapable of an innocent construction, were not privileged under *Blair* or under *Lulay* and were made with actual malice. Plaintiff Myrtle D. Slawko's affidavit stated that defendant Pechous had no part to play in awarding the contract and that his statements were untrue.

On September 22, 1977, the trial court granted summary judgment for defendant Pechous and denied the plaintiffs' cross-motion. In so doing, the court found that the defendant's statements did not fall within the scope of the executive privilege cases, but that they were capable of an innocent construction.

It is from these findings and rulings that the plaintiffs appeal.

## I.

We first consider the decision as to defendant Pechous. Plaintiffs challenge all of defendant Pechous' statements quoted in the *Suburban Week* article. However, the plaintiffs' arguments in their briefs and at oral argument before this court were directed to his "240 pieces of silver" statement. For these reasons, we will consider only whether this statement is libelous per se, not privileged, and was made with actual malice.

## A.

■■ At the outset, we note that the plaintiffs label this statement as being libelous per se. Technically, since this was an oral statement it should be characterized as being slanderous. (See *Ward v. Forest Preserve District* (2d Dist. 1957), 13 Ill. App. 2d 257, 261, 141 N.E.2d 753.) However, although slanderous words are generally actionable only upon a proper averment of special damages (*Mitchell v. Tribune Co.* (1st Dist. 1951), 343 Ill. App. 446, 447, 99 N.E.2d 397, *cert. denied* (1952), 342 U.S. 919, 96 L. Ed. 687, 72 S. Ct. 366), if such words may be fit into the categories of libel per se, damages are presumed. Those classes of words held to be libelous per se are as follows: (1) those imputing the commission of a criminal offense; (2) infection with a communicable disease of any kind which, if true, would tend to exclude one from society; (3) the inability to perform or want of integrity in the discharge of duties of office or employment; and (4) those prejudicing a particular party in his profession or trade. *Coursey v. Greater Niles Township Publishing Corp.* (1st Dist. 1967), 82 Ill. App. 2d 76, 81-82, 227 N.E.2d 164, *aff'd* (1968), 40 Ill. 2d 257, 239 N.E.2d 837.

■■ The plaintiffs contend that defendant Pechous' "240 pieces of silver" statement falls within the first, third, and fourth categories. However, defendant Pechous argues that this statement is:

"[S]ymbolic speech which does not necessarily impute the taking of a bribe but more commonly implies only the betrayal of trust. The aldermen could be viewed as having generally betrayed their public trust, as Judas betrayed Christ's trust * * *."

Thus, the defendant relies on the innocent construction rule which holds that words allegedly libelous must be read as a whole and in their best possible sense, and if they are capable of an innocent construction, they must be declared nonactionable at law. (*Jacobs v. Gasoline Retailers' Association* (1st Dist. 1975), 28 Ill. App. 3d 7, 10, 328 N.E.2d 187.) We disagree with the trial court's acceptance of the defendant's innocent construction.

In determining whether words are libelous per se, they must be taken in the sense which listeners and readers of common and reasonable understanding would attribute to them. (*Lorillard v. Field Enterprises, Inc.* (1st Dist. 1965), 65 Ill. App. 2d 65, 72, 213 N.E.2d 1.) To constitute libel per se, the offensive accusation need not state the commission of a crime in terms of art or with the particularity of an indictment. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348, 243 N.E.2d 217.) The question whether the words complained of are libelous per se is for the court to determine. (*Brewer v. Hearst Pub. Co.* (7th Cir. 1950), 185 F.2d 846, 849.) There is no general rule defining what words are defamatory and, therefore, each case depends on its own facts. *Korbar v.*

*Hite* (1st Dist. 1976), 43 Ill. App. 3d 636, 639, 357 N.E.2d 135, *cert. denied* (1977), 434 U.S. 837, 54 L. Ed. 2d 98, 98 S. Ct. 127.

■■ In construing the meaning of defendant Pechous' statement that "240 pieces of silver changed hands—30 for each alderman" in its most natural and obvious sense, we do not see how this statement can be given an innocent construction. (See *Welch v. Chicago Tribune Co.* (1st Dist. 1975), 34 Ill. App. 3d 1046, 1053, 340 N.E.2d 539; *Coursey v. Greater Niles Township Publishing Corp.* (1st Dist. 1967), 82 Ill. App. 2d 76, 82, 227 N.E.2d 164, *aff'd* (1968), 40 Ill. 2d 257, 239 N.E.2d 837.) Although this statement does not charge the crimes of bribery or official misconduct (Ill. Rev. Stat. 1977, ch. 38, pars. 33—1, 33—3) with the particularity of an indictment, the inference raised is clear. Moreover, reading this statement in its "best possible sense" (*Jacobs*) and ascribing only the defendant's "betrayal of public trust" meaning to it, we find that its impugnment of the plaintiffs' integrity in the discharge of their official duties and the concomitant prejudice to their professions is sufficient to sustain the plaintiffs' charge of libel per se (see *Weber v. Woods* (1st Dist. 1975), 31 Ill. App. 3d 122, 128, 334 N.E.2d 857).

Since an innocent reading is not plausible, summary judgment for the defendant on this ground was improper. However, since the plaintiffs appeal the denial of their motion for summary judgment, it remains to be determined whether, even though libelous, defendant Pechous' statement was privileged.

### B.

Defendant Pechous argues that his "240 pieces of silver" statement was absolutely privileged as made in the course of the proceedings of public officials (*Blair*) and constitutionally privileged as the report of the conduct of public officials. He also asserts that this statement is nonactionable insofar as it was a statement of opinion made without malice in exercising his constitutional right to comment on the plaintiffs' actions. We disagree.

■■ Defendant Pechous asserts that his responsibility to countersign all warrants drawn upon the municipal treasurer (Ill. Rev. Stat. 1977, ch. 24, par. 8—1—8), the prohibition against the abolishment of his office, the alteration of his term, or the manner of his selection without referendum (Ill. Const. 1970, art. VII, §6(f)), and his position as Berwyn's city clerk denote an elected position of high rank comparable to the positions of those officials given absolute immunity in *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385 (governor), *Loniello v. Fitzgerald* (1st Dist. 1976), 42 Ill. App. 3d 900, 356 N.E.2d 842 (mayor), and *Larson v. Doner* (2d Dist. 1961), 32 Ill. App. 2d 471, 178 N.E.2d 399 (city commissioners). Although we recognize that a city clerk is considered an officer in a city's form of

government (*Paglini v. Police Board* (1975), 61 Ill. 2d 233, 236-37, 335 N.E.2d 480), we are of the opinion that defendant Pechous has failed to show that his statement was "legitimately related to matters committed to his responsibility" (*Blair*, 64 Ill. 2d 1, 10).

Defendant Pechous asserts that his participation in the deliberations leading up to the award of the contract, his authority to sign the contract, and his position as an elected official lend credence to the proposition that his duties were not merely ministerial, and that therefore his statement related to subject matter over which he had direct responsibility and authority. Pechous refers us to no authority which gives the city clerk the right or duty to speak out in matters over which he has no authority to cast a decisive vote in the city council. Pechous refers us to no statute or ordinance granting him the authority to sign such contracts. On the contrary, the Berwyn City Code provides that "all contracts exceeding in amount the sum of five hundred dollars * * * shall be let by the commissioner of public works, with the approval of the city council * * *." Berwyn City Code §2—97.

Finally, plaintiff Myrtle D. Slawko's affidavit stated that the defendant had no part to play in the awarding of the contract. In response, defendant Pechous' affidavit merely states that he "was the duly elected qualified and acting City Clerk * * * and was obliged to keep all City Records, documents and journal[s] of council meetings * * * to make available the public records in his keeping." Pechous' affidavit not only fails to refute the plaintiff's averment that he had no responsibility over the actions of the council, but also it supports the plaintiffs' contention that his duties were merely ministerial. Strictly construing the plaintiff's affidavit (*Board of Education v. Green Valley Builders, Inc.* (2d Dist. 1973), 10 Ill. App. 3d 235, 237, 293 N.E.2d 183) and liberally construing the defendant's (*American National Bank & Trust Co. v. Lembessis* (1st Dist. 1969), 116 Ill. App. 2d 5, 10, 253 N.E.2d 126), we find that Pechous failed to deny that his duties were only ministerial and unrelated to the discretionary award of the contract and is therefore deemed to have admitted the truth of those averments (*Watson v. Southwest Messenger Press, Inc.* (1st Dist. 1973), 12 Ill. App. 3d 968, 972, 299 N.E.2d 409). Since his statement related wholly to activities and responsibilities of persons over whom he had no authority and for whose activities he had no responsibility, we agree with the trial court's finding that defendant Pechous' "240 pieces of silver" statement does not fall within the scope of the executive privilege cases.

Secondly, defendant Pechous contends that his statement was conditionally privileged as fair comment and criticism on a matter of public interest, and that the plaintiffs have failed to prove his maliciousness to defeat this privilege. Since we find this privilege

inapplicable, it is unnecessary for us to determine whether it was defeated.

■■ Four criteria must be met in order that fair comment be deemed not actionable: (1) the publication must be of an opinion, (2) it must relate not to an individual but to his acts, (3) it must be fair in the sense that the reader can see a factual basis for comment and draw his own conclusions, and (4) it must relate to a matter of public interest. (*Brewer v. Hearst Pub. Co.* (7th Cir. 1950), 185 F.2d 846, 850.) Whether these criteria are met may be determined as a matter of law. *Hahnemannian Life Insurance Co. v. Beebe* (1868), 48 Ill. 87.

■■ We recognize that a writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it might be. (*Hotchner v. Castillo-Puche* (2d Cir. 1977), 551 F.2d 910, 913.) However, although the boundary line between fact and opinion is not a precise one (*Buckley v. Littell* (2d Cir. 1976), 539 F.2d 882, 883), we disagree with the defendant's contention that his "240 pieces of silver" statement represents merely an opinion.

In *Buckley v. Littell* (2d Cir. 1976), 539 F.2d 882, the court construed the defendant's statement that, "Like Westbrook Pegler, who lied day after day * * * about Quentin Reynolds and goaded him into a lawsuit, Buckley could be taken to court by any one of several people who had enough money to hire competent legal counsel and nothing else to do" as an assertion of fact relating to Buckley's journalistic ability. In so finding, the court stated that:

> "Regardless of what other implicit but unelaborated comparisons Littell was attempting to draw between Buckley and Pegler, and regardless of whether he was attempting to say that Buckley lied about individuals precisely in the same way that Pegler did, * * * it seems to us that this third remark as it appears on its face states that Buckley was engaging in libelous journalism." *Buckley*, at 896.

Similarly, defendant Pechous' comparison of the plaintiffs' actions to Judas' betrayal of Christ's trust and his acceptance of money is clear. Regardless of whether the defendant was attempting to say that the plaintiffs literally received pieces of silver in the same way Judas did, the factual nature of this statement is apparent in the direct correlation between the number of pieces of silver and the number of aldermen on the council at the time the contract was awarded.

■■ Even assuming that this statement was merely one of opinion, liability for libel may attach when a negative characterization of a person is coupled with a clear but false implication that he was privy to facts about the plaintiffs and their actions. *Hotchner v. Castillo-Puche* (2d Cir. 1977), 551 F.2d 910, 913.

For the foregoing reasons, we find that defendant Pechous made a

factual charge that the plaintiffs had been bribed to award the contract to Clearing. As such, the defendant's "240 pieces of silver" statement does not constitute fair comment or criticism and is not privileged.

Furthermore, we are of the opinion that the plaintiffs have shown that defendant Pechous made his "240 pieces of silver" statement with actual malice, *i.e.*, with reckless disregard of whether it was true or false.

The United States Supreme Court has held that actual malice may be inferred when the investigation for a story which is not "hot news" is grossly inadequate in the circumstances. (*Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 156-58, 18 L. Ed. 2d 1094, 1111-13, 87 S. Ct. 1975.) In this case, defendant Pechous' answers to interrogatories indicate that he made no formal investigation of the circumstances surrounding the award of the contract. Defendant Pechous merely stated that the minutes from the December 29 meeting indicated a substantial deviation from prescribed municipal contracting procedures.

Furthermore, when questioned as to his personal knowledge and the factual basis for his "240 pieces of silver" statement, defendant Pechous referred to the documents and letters compiled during defendants Fineman and Field's investigation. The first of these documents charging that the plaintiffs' actions were irregular was dated January 5, 1976. Therefore, at the time defendant Pechous charged the plaintiffs with having taken bribes at the December 29 meeting, he did so solely on the basis of his unsupported opinion that the proceedings were irregular.[1]

■■ There may have been many reasons for the alleged irregularity of the plaintiffs' actions at the December 29 meeting. As a ministerial officer, defendant Pechous would not necessarily have been privy to these reasons. Nevertheless, without any investigation, and without personal knowledge of facts to support his charge, defendant Pechous charged the plaintiffs with the serious crimes of bribery and official misconduct. We are of the opinion that defendant Pechous must have had a "high degree of awareness of [the] * * * probable falsity" of his statement (*Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 13 L. Ed. 2d 125, 133, 85 S. Ct. 209), and that therefore he made the statement with reckless disregard of whether it was true or false. In our opinion the record does not support the claim of privilege asserted by defendant Pechous.

## II.

■■ Defendant Pechous' "240 pieces of silver" statement retained its unambiguous libelous meaning in the article written and published by

---

[1] With respect to the constitutional privilege of the *New York Times v. Sullivan* case, defendant Pechous' brief merely adopts by reference the arguments of defendants Fineman and Field. No attempt is made to explain why that case would protect Pechous when he initially made the statement at the council meeting.

defendants Fineman and Field. Therefore, we find that the trial court erred in granting these defendants' motion for summary judgment on the ground that the article could be innocently construed. However, we are not bound by the precise reasons given by the trial court in entering judgment. (*Weber v. Woods* (1st Dist. 1975), 31 Ill. App. 3d 122, 132, 334 N.E.2d 857.) Upon a consideration of the whole record (*Gliwa v. Washington Polish Loan & Building Association* (1st Dist. 1941), 310 Ill. App. 465, 471, 34 N.E.2d 736), we agree with the defendants' contention that their article was privileged as a report of the official conduct of public officials and that the plaintiffs have failed to defeat this privilege. Therefore, despite our disposition of the case as to defendant Pechous, we find that summary judgment was properly granted in favor of defendants Fineman and Field. See *Weber*, at 131.

In applying constitutional principles to the common law of libel, the United States Supreme Court held that public officials may recover civil damages in libel actions only when they can establish by "clear and convincing evidence" that the libel was made "with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710; *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 342, 41 L. Ed. 2d 789, 807, 94 S. Ct. 2997.) The plaintiffs do not dispute that they are "public officials" within the meaning of *Rosenblatt v. Baer* (1966), 383 U.S. 75, 85, 15 L. Ed. 2d 597, 605, 86 S. Ct. 669. Therefore, the only question is whether in the materials before the trial judge in connection with the defendants' motion for summary judgment, there was a genuine issue of fact as to the existence of actual malice, *i.e.*, knowledge of the falsity of defendant Pechous' statements in the article or reckless disregard for the truth or falsity of these statements. The trial court found that there was. We disagree.

■■ A defendant in a defamation action brought by a public official cannot automatically insure a favorable verdict by testifying that he published with a belief that the statements were true, and the question of whether publication was made in good faith without knowledge of falsity or in reckless disregard of truth or falsity is generally a question for the jury. (*Durso v. Lyle Stuart, Inc.* (1st Dist. 1975), 33 Ill. App. 3d 300, 306, 337 N.E.2d 443; *St. Amant v. Thompson* (1968), 390 U.S. 727, 732, 20 L. Ed. 2d 262, 267-68, 88 S. Ct. 1323.) However, in *Allen v. Meyer* (1958), 14 Ill. 2d 284, 292, 152 N.E.2d 576, it was held that:

> "In the instant case both parties moved for summary judgment and thereby the court was invited to decide the issues by reference to its file. It is clear that all material facts were before the court; the issues were defined; and the parties were agreed that only a question of law was involved. In this view, the parties were correct

and the entry of summary decree for one or the other was proper."

To determine whether the statements were published with the requisite actual malice, we must look to the defendants' subjective state of mind. (*St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323.) The Supreme Court's ruling in *St. Amant* that a false statement charging criminal conduct by a public official did not constitute publication with "reckless disregard" despite the fact that the writer lacked personal knowledge of the plaintiff's activities, relied on the affidavit of a person whose reputation for veracity was unknown, and failed to check the allegations with persons who might have known facts indicates that only egregious conduct by the defendant will constitute "reckless disregard" for the truth. As in *St. Amant*, the plaintiffs have failed to meet their constitutionally imposed burden of proof.

The plaintiffs first stress the alleged falsity of defendant Pechous' statements published by defendants Fineman and Field. However, whether the statements in the article were true or false is not the issue to be resolved by this court. (*Bon Air Hotel, Inc. v. Time, Inc.* (5th Cir. 1970), 426 F.2d 858, 867.) The issue is whether the plaintiffs presented "sufficient evidence to permit the conclusion that the defendant[s] in fact entertained serious doubts as to the truth of [their] publication." (*St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323.) We find that the plaintiffs presented no such evidence as to these defendants. On the contrary, as indicated in the facts, the defendants supplied the trial court with voluminous evidence establishing that they had fully investigated the circumstances surrounding defendant Pechous' charges and that their decision to publish the article was circumspect.

■■ We also find unpersuasive the plaintiffs' assertion that their denial of taking payoffs created serious doubts as to the truth of defendant Pechous' statements. In *Edwards v. National Audubon Society, Inc.* (2d Cir. 1977), 556 F.2d 113, 121, *cert. denied* (1978), 434 U.S. 1002, 54 L. Ed. 2d 498, 98 S. Ct. 647, the court stated:

> "Surely liability under the 'clear and convincing proof' standard of *New York Times v. Sullivan* cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."

■■ In view of the controversial nature of the plaintiffs' actions in awarding the refuse collection contract which was uncovered by defendants Fineman and Field's investigation, we find that these defendants' acceptance of defendant Pechous' statements without serious doubt as to their truthfulness was warranted and did not constitute the egregious conduct necessary to establish actual malice.

For the foregoing reasons, we find the article privileged under *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, and find it unnecessary to address the other privileges asserted by these defendants.

## III.

We reverse the trial court's grant of summary judgment for defendant Pechous and its denial of the plaintiffs' motion for summary judgment as to defendant Pechous and remand the cause to the circuit court of Cook County for further proceedings consistent with the views expressed herein. We affirm the trial court's grant of summary judgment for defendants Fineman and Field.

Affirmed in part; reversed and remanded in part.

STAMOS, P. J., and PERLIN, J., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE DOWNING delivered the opinion of the court:

Petitions for rehearing were filed by plaintiffs and defendant Pechous. All parties filed responses pursuant to court order. Defendant Pechous also, on January 9, 1979, filed a motion for leave to file an affidavit of Thomas P. Hardy and a certain ordinance of the City of Berwyn.

Based on our review of the petitions, the responses, and the said motion, we deem it necessary to make the following comments in denying each petition for rehearing as well as the motion of defendant Pechous for additional filings.

Our opinion was issued on December 19, 1978. On December 29, 1978, plaintiffs filed a petition for rehearing. On January 9, 1979, defendant Pechous filed both the petition for rehearing and the aforesaid motion.

For the first time defendant Pechous specifically challenges the accuracy of the following quote appearing in defendants Fineman and Field's article which was the basis of plaintiffs' suit:

"I said at the council meeting when the contract was first awarded that I think 240 pieces of silver changed hands—30 for each alderman."

The complaint charged that Pechous said on December 29, 1975: "Two hundred forty pieces of silver changed hands—thirty for each alderman," to which defendant answered with a general denial.

Although it is undisputed that the contract was awarded to Clearing at the December 29, 1975, council meeting, defendant Pechous now, for the first time in the record, contends that he did not make this statement until the January 12, 1976, council meeting, and that he did not say "30 for each alderman."

In support of this argument, defendant Pechous filed the post-opinion motion in this court seeking leave to file the affidavit of Thomas P. Hardy, a reporter for the *Berwyn Life* newspaper who attended the council meeting and wrote an article concerning the January 12, 1976, council meeting. Hardy's affidavit states that defendant Pechous did not say "240 pieces of silver changed hands—30 for each alderman" at the January 12 meeting. Rather, Hardy's article, submitted in support of his affidavit, quotes defendant Pechous as follows:

> "He went on to say that '240 pieces of silver' cemented the relationship between Clearing and the aldermen, 'destroying the tap roots of democracy.' "

■■ Although Supreme Court Rule 366(a)(3) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a) (3)) permits this court to amend the record by correcting errors or by adding matters that should have been included, it is axiomatic that new evidence not offered during the trial of a cause cannot be introduced for the first time on appeal (*H. J. Tobler Trucking Co. v. Industrial Com.* (1967), 37 Ill. 2d 341, 344, 226 N.E.2d 601; *Kohler v. Central & Southern Truck Lines, Inc.* (5th Dist. 1977), 45 Ill. App. 3d 621, 626, 360 N.E.2d 89). Morever, "[n]o application for amendment of pleadings or process will be considered if made after the cause has been submitted for decision." (Ill. Rev. Stat. 1977, ch. 110A, par. 362.) Defendant Pechous did not submit the Hardy affidavit or article to this court until long after the case had been submitted for our decision. In fact, they were not submitted until after the opinion had been issued. It is obvious that the material could have been available to defendant Pechous during the course of the trial, during the preparation of the appeal, and prior to oral argument in this court.

■■ Nor do we believe that this new evidence falls within the rule permitting rehearing only on "points claimed to have been overlooked or misapprehended by [this] court" in its original opinion. (Ill. Rev. Stat. 1977, ch. 110A, par. 367(b).) This evidence was overlooked by defendant Pechous, not the court.

As noted in our opinion, the parties' cross-motions for summary judgment invited the trial court to decide the issues by reference to its file. It was the parties' position that all material facts were before the trial court, the issues were defined, and it was agreed that only a question of law was involved. (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292, 152 N.E.2d 576.) Referring to its file, the trial court found (1) the defendant's pro se

answer generally denying all of the plaintiffs allegations; (2) Fineman's answers to the plaintiffs' interrogatories stating that Pechous had told him, "I said at the council meeting when the contract was first awarded that 240 pieces of silver changed hands—30 for each alderman"; (3) defendant Fineman's uncontradicted affidavit attesting to the accuracy of the quoted statement; and (4) defendant Pechous' own motion for summary judgment and supporting memoranda in which he incorporated the "240 pieces of silver—30 for each alderman" statement. At no time did defendant Pechous argue to the trial court that he had made the statement on January 12, 1976, and that he had not said "30 for each alderman."

Moreover, defendant Pechous' briefs submitted to this court contain numerous references to the statement as quoted by defendants Fineman and Field, *i.e.*, "240 pieces of silver—30 for each alderman." Furthermore, although the plaintiffs' statement of facts asserted that defendant Pechous made the statement on December 29, 1975 as quoted in the article, defendant Pechous' nine-page restatement of the facts in his brief never questioned this assertion. During oral argument before this court defendant Pechous did not question the accuracy of the quote, nor was the date challenged.

■■ Supreme Court Rule 341(e)(7) provides in part that "points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e) (7).) Although this rule is not jurisdictional and may be overridden by the need for a just result and uniform body of precedent, as stated by our supreme court in *Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831:

> "There are limitations. '[A]n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at the trial.' [Citations.]"

Obviously, the matters in defendant Pechous' post-opinion motion could have, yes, should have, been presented in the trial court or at the very latest before oral argument in this court.

■■ Although defendant Pechous' pro se answer generally denying all of the plaintiffs' allegations put the date and content of the quoted statement in issue, his subsequent pleadings not only failed to challenge its accuracy as it appeared throughout the parties' pleadings, memoranda, and briefs, but also reiterated these alleged inaccuracies. It is our opinion that any alleged misapprehension of the date and content of the quoted statement can only be attributed to the defendant's course of conduct throughout this litigation and his failure to raise this issue prior to the submission of the case for our decision. Because we believe that the defendant's efforts to correct these alleged inaccuracies have come too late, we must

consider the statement as quoted in the article to be accurate. See *People ex rel. Scoon v. Chicago & Alton R.R. Co.* (1911), 253 Ill. 191, 196-98, 97 N.E. 310.

In this same post-opinion motion, defendant Pechous also sought to amend the record to include those portions of the Berwyn City Code which create and define the duties of the Board of Health of that city. His petition for rehearing argues that as a member of the Board of Health at the time he made the statement, his statement was "legitimately related to matters committed to his responsibility" and therefore was privileged under *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385.

The defendant's motion to file these ordinances at this point in the litigation suffers from the same infirmities noted previously with respect to the Hardy affidavit and article. Moreover, even if we were to take judicial notice of these ordinances, we note that the defendant advances this new theory for the first time in his petition for rehearing. Under these circumstances, we think that it can hardly be said that the defendant's argument is grounded on a point which we misapprehended or overlooked. Furthermore, we find nothing in this theory which would aid defendant Pechous.

Petitions for rehearing denied; defendant Pechous' motion denied.

STAMOS, P. J., and PERLIN, J., concur.